**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROSIE D. ET AL., | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 01-30199-MAP |
| | ) |
| MITT ROMNEY ET AL., | ) |
| Defendants. | ) |

**MEMORANDUM OF DECISION**

January 26, 2006

PONSOR, D.J.

## I. INTRODUCTION

On July 30, 1965, the citizens of this country, through
the enactment of the Medicaid Act, Pub. L. 89-97, 79 Stat.
343, committed themselves to providing certain basic medical
services to millions of low-income Americans.  On December
19, 1989, Congress restated and deepened its commitment to
eligible children by amending the Medicaid statute to
promise that persons under twenty-one years of age would
receive <u>all</u> reasonably necessary medical care regardless of
ability to pay.  From today's perspective, the scope of this
commitment seems breathtaking: no Medicaid-eligible child in
this country, whatever his or her economic circumstances,
will go without treatment deemed medically necessary by his

or her clinician.

The 1989 amendment made the provision of particular services a mandatory part of each state's Medicaid program. With special relevance to this case, the amended statute called for "early and periodic screening, diagnostic, and treatment services" (so-called "EPSDT" services) for all eligible children.

This lawsuit challenges whether the Commonwealth of Massachusetts, a conceded Medicaid participant, has kept the promise made by Congress to America's children. Specifically, it charges that Defendants have failed to provide medically necessary EPSDT services to persons who might be described as the neediest of the needy: children suffering from serious emotional disturbances ("SED") such as autism, bi-polar disorder, or post-traumatic stress disorder.  Plaintiffs contend that as a result of Defendants' violation of the Medicaid statute, thousands of disabled low-income children continue to suffer needlessly.

On October 31, 2001, Plaintiffs filed their complaint, alleging violations of four specific provisions of the Medicaid Act: the EPSDT provisions, 42 U.S.C. §§ 1396a(a)(10)(A), -(a)(43), 1396d(r)(5), -(a)(4)(B)(2005)

(Count I); the "reasonable promptness" provision, § 1396a
(a)(8) (2005) (Count II); the methods of administration or
"equal access" provision, § 1396a(a)(30)(A) (2005) (Count
III); and the managed care provision, § 1396u-2(b)(5) (Count
IV).

The suit named various state officials and agencies as
defendants[1] (referred to variously as "Defendants" or "the
Commonwealth"): Mitt Romney, the Governor of Massachusetts;
Eric Kriss, the Secretary of the Executive Office of
Administration and Finance; Ronald Preston, the Secretary of
the Executive Office of Health and Human Services (EOHHS);
Robert H. Weber, Guardian ad Litem; EOHHS; and the
Massachusetts Division of Medical Assistance.

On December 19, 2001, Defendants filed a motion to
dismiss, contending, among other things, that the Eleventh
Amendment granted them immunity from suit.  Two days later,
on December 21, 2001, Plaintiffs moved for certification of
a class.

On March 29, 2002, the court denied the motion to

---

[1] Between the time Plaintiffs filed this lawsuit in 2001
and the date the suit went to trial in April 2005, a new
administration took over the governor's office.  Thus, some
parties were terminated and others added.  The names specified
in this memorandum were the defendants at the time of trial.

dismiss and certified a class of all current and future Medicaid-eligible children in Massachusetts under twenty-one years of age, who were (or might become) eligible to receive, but were not receiving, what Plaintiffs described as "intensive home-based services."

Defendants pursued an interlocutory appeal of the court's denial of their motion to dismiss. On November 7, 2002, the Court of Appeals for the First Circuit affirmed this court's ruling, holding that "Eleventh Amendment immunity does not protect state officials from federal court suits for prospective injunctive relief under the Medicaid Act." Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 238 (1st Cir. 2002).

On March 25, 2005, the court allowed the parties' joint motion to dismiss Count IV, without prejudice. Non-jury trial with regard to liability on the three remaining counts took place from April 25, 2005, to June 9, 2005. On August 9, 2005, following submission of extensive proposed findings of facts and conclusions of law by the parties, the court heard closing arguments and took the matter under advisement.

For the reasons set forth below, the court finds that

-4-

Plaintiffs have proved, by far more than a fair
preponderance of the evidence, that Defendants have failed
to comply with the EPSDT and "reasonable promptness"
provisions of the Medicaid Act.  Plaintiffs are therefore
entitled to judgment with regard to liability on Counts I
and II of their complaint; the court will consider
prospective injunctive relief pursuant to the schedule set
forth at the end of this memorandum.  As for Count III, the
claim under the equal access provisions of the Act, the
court finds that Plaintiffs have not carried their burden of
proof.

        Plaintiffs are entitled to judgment on Counts I and II
based on two types of violations of the Medicaid Act: (1)
inadequate or non-existent medical assessments and
coordination of needed services for children with serious
emotional disturbances, and (2) inadequate or non-existent
in-home behavioral support services for the same group.

        With regard to assessment and coordination of services,
the testimony of virtually all of Plaintiffs'  --  and for
that matter Defendants'  --  witnesses established that
compliance with Medicaid's EPSDT mandate for children with a
serious emotional disturbance requires that Defendants

provide, at a minimum, reasonably comprehensive medical
assessments and ongoing clinical oversight of the services
being provided.  The evidence established overwhelmingly
that, for this particularly needy group, assessment and
coordination is essential to (a) identify promptly a child
suffering from a serious emotional disturbance, (b) assess
comprehensively the nature of the child's disability, (c)
develop an overarching treatment plan for the child, and (d)
oversee implementation of this plan (typically by multiple
medical providers) as the needs of the child evolve.

The evidence showed, time and again, that the
Commonwealth's efforts to comply with these minimum EPSDT
assessment and service coordination requirements were
woefully inadequate, with detrimental consequences for
thousands of vulnerable children.  At present, thousands of
needy SED children lack comprehensive assessments; treatment
occurs haphazardly, with no single person or entity
providing oversight and ensuring consistency.  Multiple
providers offer overlapping and sometimes conflicting
services, with little or no knowledgeable, overall
coordination.

The second aspect of Defendants' Medicaid violation

concerns the provision of in-home behavioral support services.  Plaintiffs offered credible evidence that such services are a medical necessity for many SED children, particularly the roughly 15,000 Medicaid-eligible SED children in the Commonwealth who suffer extreme functional impairment.  Except in rare instances, however, Defendants fail to provide these services adequately.  The result of this failure is that thousands of Massachusetts children with serious emotional disabilities are forced to endure unnecessary confinement in residential facilities, or to remain in costly institutions far longer than their medical conditions require.  The shortage or inadequacy of in-home support services often results in removal of a fragile child from his or her home.  While such a removal is a heartbreaking consequence in and of itself, it is equally clear that the unnecessary isolation of a child in an expensive residential facility has well-documented, objective clinical sequelae.  These are reflected in exacerbated symptoms including: failure at school, inability to relate positively to others, isolating depression, and assaultive or other anti-social behavior.

     The undisputed evidence offered at trial made it clear

that children with serious emotional disabilities are among
the most fragile members of our society; their medical needs
frequently extend across a spectrum of service providers and
state agencies.  Prompt, coordinated services that support a
child's continuation in the home can allow even the most
disabled child a reasonable chance at a happy, fulfilling
life.  Without such services a child may face a stunted
existence, eked out in the shadows and devoid of almost
everything that gives meaning to the gift of life.
Defendants' failure to provide adequate assessments, service
coordination, and home-based supportive services for
Medicaid-eligible children with serious emotional
disturbances was glaring from the evidence and at times
shocking in its consequences.

## II.  **THE STATUTORY ENVIRONMENT**

### A.  **The Medicaid Act and Regulations**.

In passing the Medicaid Act, Congress embarked on an
ambitious program to provide medical care for the country's
poorest people.  The Act creates a "cooperative federal-
state program" through which states that elect to
participate receive federal financial assistance to pay for
the medical treatment of specific groups of needy

individuals.  See Pharm. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 650 (2003); Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 502 (1989).  To receive the funds, states are required first to formulate a plan that meets federal requirements.  See Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 433 (2004); Ark. Med. Soc'y, Inc. v. Reynolds, 6 F.3d 519, 522 (8th Cir. 1993) (noting that a state's plan must comply with the "fifty-eight subsections outlined in 42 U.S.C. § 1396a").

A state's plan must provide coverage to seven designated classes of needy individuals, termed "categorically needy," for at least seven specific kinds of medical care or services.  See §§ 1396a(a)(10)(A)(i), -(a)(17), 1396d(a). See Pharm. Research & Mfrs., 538 U.S. at 651 n.4.  A state may, if it chooses, extend this coverage to other designated populations, termed "medically needy." § 1396a(a)(10)(C).  Additionally, the state may choose to expand the care and services available under its plan beyond the seven mandated categories.  See §§ 1396a(10)(A), 1396d(a) (defining "medical assistance" by enumerating twenty-eight types of care and services).  For example, a state must provide coverage of inpatient hospital and

physicians' services, but retains the option of covering
private duty nursing or physical therapy services.  See §§
1396a(a)(10)(A), 1396d(a).

Congress does not require states to participate in the
Medicaid Act.  However, once a state opts in, it must abide
by Medicaid's laws and regulations in order to obtain
federal funds.  See Bowen v. Massachusetts, 487 U.S. 879,
883 (1988); Bryson v. Shumway, 308 F.3d 79, 81 (1st Cir.
2002); see also 42 U.S.C. § 1396a.  Although the Medicaid
statute and its regulations impose many obligations, states
do retain substantial discretion in implementing their plans
and in choosing "the proper mix of amount, scope, and
duration limitations on coverage, as long as care and
services are provided in the best interests of the
recipients."  Alexander v. Choate, 469 U.S. 287, 303 (1985),
quoted in Pharm. Research & Mfrs., 538 U.S. at 665; see also
42 C.F.R. § 440.230(d) (2005) (allowing states to "place
appropriate limits on service based on such criteria as
medical necessity or on utilization control procedures");
S.D. ex rel. Dickson v. Hood, 391 F.3d 581, 591 (5th Cir.
2004); Ark. Med. Soc'y, 6 F.3d at 531 (holding, in a case
involving the equal access provision, that a state "may take

. . . budget factors into consideration when setting its reimbursement methodology," but "may not ignore the Medicaid Act's requirements in order to suit budgetary needs"); J.K. ex rel. R.K. v. Dillenberg, 836 F. Supp. 694, 697 (D. Ariz. 1993).

Plaintiffs challenge Defendants' compliance with three Medicaid Act provisions: EPSDT, reasonable promptness, and equal access.  Each has its own particular requirements.

**1. EPSDT**.

As broad as the overall Medicaid umbrella is generally, the initiatives aimed at children are far more expansive. When Congress amended the Medicaid statute in 1989, it made the provision of "early and periodic screening, diagnostic, and treatment services" ("EPSDT" services) to Medicaid-eligible children mandatory for participating states. Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 6403, 103 Stat. 2261-2265, 2268, 2269 (codified as amended at 42 U.S.C. § 1396d(r)(2005)); 42 U.S.C. § 1396d(a)(4)(B), -(r).  In defining EPSDT services, Congress required states to include four types of specific services: screening, vision, dental, and hearing services.  In addition to these services, the statute mandated the

provision of

> [s]uch other necessary health care, diagnostic services, treatment, and <u>other measures described in subsection (a)</u> of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, <u>whether or not such services are covered under the state plan</u>.

42 U.S.C. § 1396d(r)(5)(emphasis added).

Subsection (a), which defines the term "medical assistance," enumerates seven categories of care and services that must be covered under a state's plan. In addition, twenty-one other categories may, at the option of the state, be included under the state's Medicaid plan. <u>See</u> § 1396d(a).  Therefore <u>all</u> twenty-eight types of medical care and services contained within the definition of "medical assistance" are mandated EPSDT services.  Thus, Congress

> imposed a mandatory duty upon participating states to provide EPSDT-eligible children with <u>all the health care, services, treatments and other measures described in § 1396d(a) of the Act</u>, when necessary to correct or ameliorate health problems discovered by screening, <u>regardless of whether the applicable state plan covers such services</u>.

<u>S.D.</u>, 391 F.3d at 589-90(emphasis added); <u>see also</u> <u>Rosie D.</u>, 310 F.3d at 232 (stating that the 1989 amendments "required states to provide Medicaid coverage for any service

'identified as medically necessary through the EPSDT program'" (quoting 135 Cong. Rec. S6899, 6900 (daily ed. June 19, 1989)(statement of Sen. Chafee)).

In other words, while a state may chose which medical services beyond the mandated seven it may offer to eligible adults, states are bound, when it is medically necessary, to make available to Medicaid-eligible children <u>all</u> of the twenty-eight types of care and services included as part of the definition of medical assistance in the Act.  See <u>S.D.</u>, 391 F.3d at 590 ("[E]very Circuit which has examined the scope of the EPSDT program has recognized that states must cover every type of health care or service necessary for EPSDT corrective or ameliorative purposes that is allowable under 1396d(a)."); <u>Collins v. Hamilton</u>, 349 F.3d 371, 376 n.8 (7th Cir. 2003) ("[O]ther circuits [have] also found that in the context of individuals under the age of twenty-one subject to EPSDT services, a state's discretion to exclude services deemed 'medically necessary' by an EPSDT provider has been circumscribed by the express mandate of the statute.")

Because the only limit placed on the provision of EPSDT services is the requirement that they be "medically

necessary," the scope of the EPSDT program is broad.  <u>See,</u>
<u>e.g.</u>, <u>S.D.</u>, 391 F.3d at 594-95 (finding disposable
incontinence underwear qualifies under "home health care
services", § 1396d(a)(7), as a form of medical assistance
for which the state must cover the costs); <u>Pediatric</u>
<u>Specialty Care, Inc. v. Ark. Dep't of Human Servs.</u>, 293 F.3d
472, 480 (8th Cir. 2002) (holding that Medicaid-eligible
children have "a federal right to early intervention day
treatment when a physician recommends such treatment");
<u>Pittman ex rel. Pope v. Sec'y, Fla. Dep't of Health & Rehab.</u>
<u>Servs.</u>, 998 F.2d 887, 892 (11th Cir. 1993) (holding that the
discretion Medicaid gives states to elect not to cover organ
transplants for adults does not extend to cases involving
qualified Medicaid recipients under age twenty-one);
<u>Chisholm v. Hood</u>, 133 F. Supp. 2d 894 (E.D. La. 2001)
(holding that the state must provide services rendered by a
licensed psychologist because services by psychiatrists or
other practitioners cannot substitute).

     The breadth of EPSDT requirements is underscored by the
statute's definition of "medical services."  Section
1396d(a)(13) defines as covered medical services any
"diagnostic, screening, preventative, and rehabilitative

services, including any medical or remedial services . . .
for the <u>maximum reduction of physical or mental disability</u>
and restoration of an individual to the <u>best possible</u>
<u>functional level</u>."  42 U.S.C. § 1396d(a)(13) (emphasis
added).  Thus, if a licensed clinician finds a particular
service to be medically necessary to help a child improve
his or her functional level, this service must be paid for
by a state's Medicaid plan pursuant to the EPSDT mandate.
<u>See</u> §§ 1396d(a)(13), 1396d(r)(5); <u>Pediatric Specialty Care</u>,
293 F.3d 472.

Courts construing EPSDT requirements have ruled that so
long as a competent medical provider finds specific care to
be "medically necessary" to improve or ameliorate a child's
condition, the 1989 amendments to the Medicaid statute
require a participating state to cover it.  <u>See, e.g.</u>,
<u>Collins</u>, 349 F.3d at 375 (holding that if a competent
medical service provider determines that a specific type of
care or service is medically necessary, state may not
substitute a different service that it deems equivalent);
<u>see also</u> <u>Rosie D.</u>, 310 F.3d at 232; <u>John B. ex rel. L.A. v.</u>
<u>Menke</u>, 176 F. Supp. 2d 786, 800 (M.D. Tenn. 2001) (noting
that a state "is bound by federal law to provide 'medically

necessary' EPSDT services").

Congress' firm intent to ensure that Medicaid-eligible children actually receive services is powerfully underlined by provisions in the statute that place explicit duties on states to: (a) inform eligible children of the availability of early and periodic screening, diagnostic, and treatment services, (b) provide or arrange for screening services "in all cases where they are requested," and (c) arrange for whatever corrective treatments are discovered to be needed. See § 1396a(a)(43); see also 42 C.F.R. § 441.56(a)(1), -.61, -.62 (2005).

The requirement that states inform eligible children of EPSDT services has both procedural and substantive implications.  States must draft guidelines by which the information regarding EPSDT services is to be transmitted; they must also ensure that effective notice, in fact, reaches children and their families.  See 42 C.F.R. § 441.56(a)(1) (2005).  If a state's scheme for informing children of their rights is ineffective or conveys out-of-date or inaccurate information, the state is not in compliance with the law.  See Health Care for All v. Romney, Civ. No. 00-10833RWZ, 2005 WL 1660677, at *14 (D. Mass. July

7, 2005) (Zobel, J.) (concluding that the state violated its
duty to inform children of EPSDT services where notices sent
to children and their families contained "incorrect or
outdated guidance on obtaining services"); cf. Pediatric
Specialty Care, 293 F.3d at 481 ("The state may not shirk
its responsibilities [under § 1396a(a)(43)] to Medicaid
recipients by burying information about available services
in a complex bureaucratic scheme."); John B., 176 F. Supp.
2d at 802 ("The State must assure that the contractors
provide adequate outreach efforts"); Chisholm, 133 F. Supp.
2d at 901 (concluding that the state's system for providing
access to psychological services for Medicaid-eligible
children rarely resulted in children successfully receiving
the services and fell "woefully short of complying with
federal law").

Moreover, in Health Care for All, the court noted that
the Act requires a proactive approach.  The statute
effectively requires states to identify obstacles to the
effective conveyance of information and to "develop measures
to mitigate the negative impact of such potential
influences."  2005 WL 1660677 at *14.

   2.   **Reasonable Promptness**.

The statute also requires states to provide medical attention in a timely manner.  Assistance must be "furnished with reasonable promptness to all eligible individuals." § 1396a(a)(8); see also Doe ex rel. Doe v. Chiles, 136 F.3d 709, 718 (11th Cir. 1993) (finding that because "[t]he language of the statute is undoubtedly cast in mandatory rather than precatory terms," the reasonable promptness clause imposes a binding obligation).

The accompanying Medicaid regulations require state agencies to "[f]urnish Medicaid promptly to recipients without any delay caused by the agency's administrative procedures."  42 C.F.R. § 435.930 (2005).  In addition, the state agency "must set standards for the timely provision of EPSDT services which meet reasonable standards of medical . . . practice, . . . and must employ processes to ensure timely initiation of treatment, if required, generally within an outer limit of 6 months after the request for screening services."  Id. § 441.56(e).

Although the statute does not specifically define "reasonable promptness," courts facing this question have found defendants in violation of the provision when eligible individuals are placed on waiting lists for medically

-18-

necessary services.  <u>See, e.g.</u>, <u>Sobky v. Smoley</u>, 855 F. Supp
1123, 1148 (E.D. Cal. 1994) (discussing the history of the
"reasonable promptness" language and noting that it is
intended to prevent states from "establish[ing] waiting
lists for individuals eligible for assistance" (quotation
omitted)).  Courts have also found a failure to comply with
the statute where a state fails to establish guidelines for
the timely provision of services recommended after a
screening.  <u>See</u> <u>Kirk T. v. Houstoun</u>, Civ. No. 99-3253, 2000
US Dist. LEXIS 8768, at * 14 (E.D. Pa. June 23, 2000)
(finding the defendant in violation of the "reasonable
promptness" provision where the state lacked "some method of
measuring timeliness," thus making it "impossible to tell
whether the state is in compliance with the Medicaid
statute").

     A reasonable promptness violation may also turn on the
nature of the services provided.  In <u>Boulet v. Cellucci</u>,
plaintiffs received access to some services in a prompt
manner, but were denied access to the specific services they
had requested.  The court held that "the assistance must
correspond to the individual's needs" and that the
requirement of prompt provision of services "is not

satisfied by other services the plaintiffs are receiving or might be offered." <u>Boulet v. Cellucci</u>, 107 F. Supp. 2d 61, 79 (D. Mass. 2000) (Woodlock, J.).

   **3.   <u>Equal Access</u>.**

   Finally, states must satisfy the "equal access" provision of the Medicaid statute.   <u>See</u> <u>Ark. Med. Soc'y</u>, 6 F.3d at 522.   Section 1396a(a)(30)(A) requires states to:

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers <u>so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.</u>

42 U.S.C. § 1396a(a)(30)(A)(emphasis added); <u>see also</u> 42 C.F.R. § 447.204 (2005).

   The purpose of the equal access provision and its corresponding regulations is "to prevent gross disparity between the availability of [a] service to Medicaid patients and its availability to those who can afford to pay privately." <u>King v Sullivan</u>, 776 F. Supp. 645, 655 (D.R.I. 1991) (stating that "[t]he 'sufficiency' of a state's reimbursement payments is measured against the payments that

-20-