```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
```

```
ROSIE D., by her parents     )
John and Debra D., ET AL.,   )
Plaintiffs                   )
                             )
              v.             )    C.A. NO. 01-cv-30199-MAP
                             )
DEVAL PATRICK, ET AL.,       )
Defendants                   )
```

### MEMORANDUM AND ORDER REGARDING
### PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS
(Dkt. No. 487)

January 3, 2011

**PONSOR, D.J.**

### I. INTRODUCTION

This case comes before the court on Plaintiffs' Motion for Attorneys' Fees and Costs pursuant to 42 U.S.C. § 1988. (Dkt. No. 487.) For the reasons stated below, the motion will be allowed, in part.

### II. BACKGROUND

On October 31, 2001, Plaintiffs filed this lawsuit on behalf of a class of Medicaid-eligible children suffering from Serious Emotional Disturbance ("SED"). Following a lengthy bench trial, Plaintiffs obtained a judgment in their

favor on liability on January 26, 2006.  Many months of negotiations between the parties followed in an attempt to craft an agreed remedy, until, when the parties were unable to reach a consensus, the court issued its remedial order and final judgment on July 16, 2007.

The judgment required Defendants (1) to initiate education and outreach to ensure that care givers of eligible children were informed about the availability of behavioral health services under Medicaid; (2) to provide assessments of children who might need these behavioral services; (3) to make "Intensive Care Coordination and Treatment Planning" available to children who desired to have it; and (4) to offer reimbursement for behavioral health services deemed medically necessary (subject to certain conditions and the availability of federal funding). Implementation of the judgment was to be monitored by a neutral, court-appointed monitor over a period of five years, during which the court would retain jurisdiction.  No one contests that the judgment was a victory for Plaintiffs, who were awarded substantial attorneys' fees on January 14, 2009 for the period up to January of 2007.

Since January 2007, the implementation of the judgment has indisputably required significant effort from Plaintiffs' counsel. The process has featured both substantial cooperation among the parties and, at times, a certain amount of dispute. Plaintiffs now request an award of additional fees and costs for time spent monitoring implementation and litigating disputes from January 1, 2007 through June 30, 2009, in the amount of $1,476,592.65, plus $28,657.65 in costs. (Dkt. Nos. 487 and 488, Ex. 1.)

Defendant Executive Office of Health and Human Services ("Defendant") has submitted a limited opposition to Plaintiffs' motion, arguing that the court should reduce the award to a modest extent, to no more than $1,223,728.28. No objection is offered to the claim for costs. In support of its position, Defendant contends, first, that the hourly rates of Plaintiffs' attorneys were excessive and, second, that Plaintiffs' counsel is not entitled to fees for activities that were not, Defendants say, reasonably calculated to deliver a material benefit to Plaintiffs. The five challenged activities are:

- Filing a motion for declaratory relief to the effect

that certain clinical determinations -- those that might make a child ineligible for services under the remedial order -- were appealable;

- Opposing Defendants' interpretation of the judgment to the effect that only class members in certain MassHealth coverage categories were eligible for services (Plaintiff argued that all class members were entitled to benefits regardless of their MassHealth coverage categories);

- Opposing Defendant's motion to postpone certain service-implementation deadlines;

- Proposing an alternative form of judgment in April 2007; and

- Litigating Plaintiffs' previous fee request.

### III. DISCUSSION

The court will find (1) that most of the challenged activities were necessary to monitor the judgment and (2) that the requested fee award for work on the original fee petition is reasonable. In addition, the court will not reduce Plaintiffs' counsels' hourly rates on the ground, as Defendant suggests, that post-trial work in this case deserves a lower measure of compensation than trial work.

A. Specific Challenged Activities.

    1. The Legal Standard.

"[P]ost-judgment services necessary for reasonable

monitoring of a consent decree are compensable" based upon the original prevailing party status. Garrity v. Sununu, 752 F.2d 727, 738-739 (1st Cir. N.H. 1984). To demonstrate reasonableness, a prevailing party's counsel need not show that a "substantial issue" has arisen regarding the defendant's obligations under the remedial order, or that "the work of plaintiffs' counsel yield[ed] a resolution more favorable to the class than the defendants were prepared to concede." Brewster v. Dukakis, 786 F.2d 16, 18 (1st Cir. 1986) (affirming the Garrity standard for award of fees associated with post-judgment monitoring).

Defendant correctly notes that, in the post-judgment monitoring phase, the court should not necessarily compensate Plaintiffs' counsel "for every legal undertaking, whether successful or not." (Dkt. No. 499, Def.'s Mem. at 6.) Instead, Defendant proposes that the court should identify activities that "were not reasonably calculated to (and, indeed, did not) produce material benefits to the plaintiff class" and should decline to award fees for those activities. (Id. at 7.)

Plaintiffs argue that Defendant's approach runs afoul

5

of the Brewster rule. As noted, Brewster explicitly repudiated the requirement that Plaintiffs' counsel's work must result in a "more favorable" outcome than would otherwise have been achieved. Brewster, 786 F.2d at 18.

Defendant attempts to distinguish its "material benefit" rule from the "more favorable outcome" rule rejected in Brewster. It explains that its "reasonably calculated to produce material benefit" standard would not require actual success but only a reasonable likelihood of some "material benefit." (Dkt. No. 499, Def.'s Mem. at 9.) Defendant has not cited any authority for its proposed standard, which would be significantly stricter than Garrity demands. Accordingly, the court will not adopt it and, using the Garrity standard, will make the conventional inquiry into whether each of the challenged activities was necessary for reasonable monitoring.

It is important to note that this reasonableness standard, while flexible up to a point, does not give a plaintiffs' attorney carte blanche to expend whatever hours are deemed necessary, willy nilly, with confidence that the court will necessarily award fees to compensate them. A

6

court must take seriously its responsibility to oversee post-judgment attorneys' fees requests and, in the blunt words of the Court of Appeals, avoid creating "a state-funded, open-ended sinecure for counsel." Brewster, 786 F.2d at 18 (internal quotation omitted). A review of the implementation activities challenged by Defendant in light of this standard reveals that virtually all were entirely reasonable and necessary.

   2.  Seeking an Order Declaring Clinicians'
       Determinations Appealable.

Plaintiffs sought an explicit declaration from the court that a clinician's determination rejecting a class member's eligibility for services under the remedial order would be appealable according to a stipulated process. Defendant does not argue that counsel's decision to bring this significant issue to the attention of the court was unnecessary to insure reasonable monitoring. Nor does it argue that Plaintiffs' counsel spent an inordinate amount of time on the motion. Defendant's brief simply states that the "exercise was not reasonably calculated to deliver a material benefit to the Plaintiff class (and, ultimately,

did not)."  (Dkt. No. 499, Def.'s Mem. at 9.)

The court is not persuaded that Plaintiffs' attempt to obtain a court order, though not immediately successful, was unreasonable.  Plaintiffs understandably sought assistance from the court in identifying pivotal clinical decisions that class members might challenge and in determining procedures to press these challenges.  True, the court ultimately found that it was premature to address this particular dispute.  Evidence had not, and (so far as the court can discern now) has not, emerged that an appeals process of this sort was or is needed.  But, the issue was not so obviously unripe, or so trivial, as to be an unreasonable use of counsel's time.

    3.    <u>Seeking an Order Defining the Population of Eligible Children</u>.

In October 2007, Plaintiffs opposed Defendants' proposed regulations that, in their view, would effectively exclude some members of the Plaintiff class from eligibility for services under the court's remedial order.  (Dkt. No. 375.)  After a hearing on the issue, Defendant agreed to provide the services at issue to the entire Plaintiff class.

8

Defendant, noting that no court-ordered relief issued following the hearing, now argues that the dispute "was not calculated to, and did not, lead to any tangible betterment" for the Plaintiff class. (Dkt. No. 499, Def.'s Mem. at 10.)

An explicit court order need not issue every time a dispute arises to justify an award of fees in a post-judgment context, particularly where the ultimate agreed resolution of the dispute benefits the plaintiff class. It is true that Defendant and Plaintiffs ultimately reached an accommodation on the crucial issue of who was covered by the court's order, but it does not follow that Plaintiffs' expenditure of time in negotiating this accommodation was either unnecessary or unreasonable. Negotiations around eligibility issues are a classic part of post-judgment implementation, and Plaintiffs' efforts to litigate and ultimately resolve this issue without court intervention were entirely reasonable and appropriate.

    4.    <u>Opposing Defendants' Motion to Postpone Agreed-Upon Implementation Schedule</u>.

Defendant does not argue that Plaintiffs' opposition to its draft order extending the dates of implementation was

per se frivolous. It does, however, object to Plaintiffs' motion for discovery seeking "to look behind Commonwealth's budgetary process and, implicitly, to determine what other cuts could have been made" to avoid the extension of deadlines. (Dkt. No. 499, Def.'s Mem. at 11.) Accordingly, Defendant seeks to exclude fees for time it estimates Plaintiffs' counsel spent seeking to inquire into the budget process.

Here, the court agrees that a modest reduction in fees is appropriate. While Plaintiffs' efforts to litigate Defendant's proposal to modify the remedial order's implementation schedule were appropriate, the attempt to analyze the Commonwealth's budget as a whole, and offer a critique of the state's overall budgetary decision making, went a step too far, both legally and factually. The court will therefore reduce Plaintiffs' proposed fee award by $24,024.76.

5. **Proposing an Alternate Form of Judgment**.

In the months leading to the issuance of the court's final judgment and remedial order in July 2007, Defendant prepared the first draft judgment. Plaintiffs objected to

Defendant's proposal <u>in toto</u> and, alternatively, offered suggested modifications to Defendant's draft if the court were inclined to adopt it.  Ultimately, the court adopted most of Defendant's draft and some, but not all, of Plaintiffs' suggested modifications in its final judgment and order.  The court concluded that it would be fairer to Defendant, and more beneficial to the Plaintiff class, to expect Defendant to comply with what was largely their own proposed remedial order, rather than generate a different order out of whole cloth and then proceed to enforce it.

Defendant now argues that, although some of Plaintiffs' suggested modifications to its original proposal were well grounded, Plaintiffs' filing of a seventeen-page brief with "hundreds of pages" of attached exhibits was excessive and "a more targeted approach" would have accomplished the same result.  (Dkt. No. 499, Def.'s Mem. at 14.)  In particular, Defendant objects to Plaintiffs' having urged the court to reject Defendant's entire proposed draft outright.  As a result, Defendant contends, the fees requested for working on the draft judgment and remedial order should be reduced by one third.

Defendant's position is not persuasive. Plaintiffs timely objected to Defendant's proposed draft judgment on a number of valid grounds, and they properly raised those objections in court. Their arguments were far from frivolous; their papers were not excessive; and the amount of attorney time spent litigating the wording of the final judgment was quite reasonable given the crucial stage of the litigation. Again, litigating the terms of a remedial order is a classic and essential post-judgment task. Indeed, this work is fully as important as the effort put into obtaining the original judgment on liability. Without care, the judgment on liability giveth, and the remedial judgment taketh away. <u>See</u> Job 1:21 ("The Lord giveth, and the Lord hath taken away.") Given the level of detail in the order in this case, and the number of these details that would have crucial consequences for the Plaintiff class, participation in the discussions leading to the issuance of the remedial order demanded a significant commitment of time if the interests of this particularly vulnerable class were to be protected.

B.  <u>Fees for Litigating the Original Fee Petition</u>.

Defendant does not dispute that Plaintiffs' counsel is entitled to attorneys' fees for time spent litigating the original request for fees and costs.  However, Defendant argues that the amount of time Plaintiffs' counsel spent preparing this initial fee petition was unreasonable.  Defendant, noting that the fee request was decided on the papers on the basis of a single motion, argues that the 181 attorney hours claimed for assembling and defending the request is excessive.  Defendant further argues that the assembly of a fee request is essentially ministerial and "can be accomplished for the most part by secretaries and staff," but "was performed to an excessive degree by the highest-compensated members of the plaintiffs' legal team." (Dkt. No. 499, Def.'s Mem. at 15-16.)

The fee request was certainly well prepared and deserved the praise it received.  However, the equivalent of twenty-two eight-hour days claimed for its drafting does exceed a reasonable boundary.  The court will therefore reduce this element of the current fee request by the thirty percent proposed by Defendant, or $21,541.04.

C.   <u>Proposed 12% Across-the-Board Reduction in Hourly Rates</u>

**to Reflect Less Strenuous Nature of Post-Judgment Practice**.

The court will not reduce Plaintiffs' counsels' hourly rates for work during implementation. While it is perhaps true, in some cases, that post-judgment work is less onerous, and therefore less compensable, than trial-related work performed prior to judgment, this paradigm simply does not hold up in this case. Post-judgment work in this complicated case and for this vulnerable class, even with the assistance of the monitor, has been fully as demanding as the work performed in obtaining the original judgment on liability. It is noteworthy, moreover, that Plaintiffs' counsel are seeking no increase in 2011 over the rates claimed in 2007. Nothing more need be said.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Attorneys' Fees and Costs is hereby ALLOWED. Counsel are hereby awarded $1,431,026.85 in fees and $28,657.65 in costs, to paid, absent an appeal, within ninety days of this ruling.

It is So Ordered.

/s/ Michael A. Ponsor
                                   MICHAEL A. PONSOR
                                   U. S. District Judge