## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| ROSIE D., et al. | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) |
| CHARLES BAKER, et al | ) |
| Defendants | ) |

C.A. No.
01-30199 - RGS


## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES FOR PERIOD FROM JULY 2018 THROUGH NOVEMBER 2021

MAURA HEALEY
ATTORNEY GENERAL

Daniel J. Hammond, BBO #559475
Douglas S. Martland, BBO #662248
Assistant Attorneys General
Government Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2078/2062
dan.hammond@mass.gov
douglas.martland@mass.gov


Dated: February 4, 2022

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................1

ARGUMENT ...........................................................................................................................5

      I.      The Plaintiffs' Attorneys Are Ineligible for Fees or Costs Under 42 U.S.C. § 1988 for Their Unsuccessful Efforts to Expand the Judgment. ........................... 5

      II.     Even If the Plaintiffs' Attorneys Are Eligible for Fees Under Section 1988, They Are Not Entitled to Fees for Their Work Since July 2018 Due to Their Complete Lack of Success. ...................................................................... 8

              A.     Plaintiffs' Attorneys Are Not Entitled to Fees or Costs for Their Unsuccessful Motions to Expand the Judgment. ........................................ 9

              B.     Plaintiffs' Counsel Are Not Entitled to Fees or Costs for Their Unsuccessful Opposition to Relief Expressly Provided in the Judgment. ........................................................................................................ 12

              C.     Plaintiffs' Attorneys Are Not Entitled to Fees for Their Unsuccessful Effort to Oppose the Commonwealth's Motion to Terminate the Judgment. ............................................................................... 14

              D.     Plaintiffs' Attorneys Are Not Entitled to Fees for the Limited Monitoring They Engaged in After December 31, 2018. ........................ 17

              E.     Any Award of Fees for Time Spent on Billing-Related Activities Should Be Contingent on Plaintiffs' Underlying Success on Discrete Aspects of This Fee Dispute. ...................................................... 18

      III.    Even If This Court Determines that the Plaintiffs' Attorneys Are Eligible for and Entitled to Fees in Any of the Categories Set Forth Above, an Entry-By-Entry Review of Their Timesheets Is Necessary to Ensure that Their Efforts Are Properly Categorized. ............................................................. 19

CONCLUSION.....................................................................................................................20

## INTRODUCTION

In the wake of this Court's June 19, 2021, order terminating the Judgment in this case, the only dispute remaining is for this Court to determine whether, and to what extent, Plaintiffs are entitled to attorneys' fees for work their counsel performed during the final three-plus years of litigation. During this time, the Defendants successfully demonstrated that (a) the monitoring period under the Judgment rightfully expired at the end of 2018, and the Plaintiffs had failed to demonstrate good cause why it should be extended; (b) the Defendants had substantially complied with the Judgment and had satisfied the criteria for terminating it; and (c) there was no basis for the Court to expand the Judgment by adding the new substantive terms that the Plaintiffs proposed. The Plaintiffs' legal team spent the entirety of this period unsuccessfully opposing each of the Defendants' motions, all while separately advancing unsuccessful motions to expand the Judgment. Under the extant case law, the Commonwealth's taxpayers should not be obligated to pay the Plaintiffs' attorneys for these efforts. Accordingly, the Defendants oppose the award of any attorneys' fees to the Plaintiffs for their counsel's work during this period.

## BACKGROUND

To date, the Commonwealth's taxpayers have already paid the Plaintiffs' attorneys almost $11 million in fees in this litigation. *See* Docket No. 938, ¶ 4. The Plaintiffs' attorneys now seek an additional $1,310,648 in fees and $654 in costs from the Commonwealth's taxpayers for post-Judgment work between July 1, 2018, and November 29, 2021. *See* Docket Nos. 970, p. 3 & 971-1 (Plaintiffs' Exh. 1). The requested fees extend across four distinct periods of the case, each of which is discussed below.

**Period 1: July 2018 – February 2019**. Although the Plaintiffs' attorneys' fee request does not group their work during this period into particular categories, review of their timesheets filed in support of the motion reveals that the work falls into four main categories: (1) fees for

1

their ultimately unsuccessful opposition to MassHealth's motion to terminate monitoring,[1] (2) fees for their unsuccessful affirmative motion to modify the Judgment,[2] (3) fees for monitoring-related activities,[3] and (4) fees for billing-related work.[4] This same entry-by-entry review of their timesheets (as well as the rates set forth in, variously, the timesheets and Docket No. 971-2) suggests that the Plaintiffs' attorneys are seeking approximately $141,325 for their work in the District Court on their ultimately unsuccessful opposition to MassHealth's motion to terminate monitoring, $77,490 for their unsuccessful affirmative motions to modify the Judgment, $6,000 for monitoring-related activities, and $1,680 for the billing-related work. *See* Affidavit of Daniel J. Hammond ("Hammond Aff."), ¶¶ (2-8) (discussing review methodology and compiling results).

**Period 2: March 2019 – June 2020**. Most of the fees the Plaintiffs' attorneys accrued during this period stem from proceedings before the First Circuit, where the Plaintiffs unsuccessfully attempted to defend the District Court's denial of MassHealth's motion to

---

[1] *See* Docket No. 971-14, pp. 1-10 (Schwartz: 56.5 hours); Docket No. 971-15, pp. 1-17 (Rucker: 61.7 hours); Docket No. 971-16, pp. 1-3 (Costanzo: 21.3 hours); Docket No. 971-17 (Bundy: 63.1 hours); Docket No. 971-20, p. 1 (Laski: 28.2 hours); Docket No. 971-21, pp. 1-2 (Halston: 12.9 hours; Sujanani: 2.1 hours).

[2] *See* Docket No. 971-14, pp. 1-10 (Schwartz: 45.3 hours); Docket No. 971-15, pp. 1-17 (Rucker: 58.5 hours); Docket No. 971-16, pp. 1-3 (Costanzo: 5.9 hours); Docket No. 971-21, pp. 1-2 (Halston: 1 hour).

[3] *See* Docket No. 971-14, pp. 1-10 (Schwartz: 0 hours); Docket No. 971-15, pp. 1-17 (Rucker: 4.6 hours); Docket No. 971-16, pp. 1-3 (Costanzo: 0 hours); Docket No. 971-20, p. 1 (Laski: 4 hours); Docket No. 971-21, pp. 1-2 (Wilmer attorneys: 0 hours)

[4] *See* Docket No. 971-14, pp. 1-10 (Schwartz: 0.3 hours); Docket No. 971-15, pp. 1-17 (Rucker: 0.9 hours); Docket No. 971-16, pp. 1-3 (Costanzo: 1.2 hours)

terminate monitoring, a ruling that the First Circuit ultimately reversed and vacated.[5] The

Plaintiffs' attorneys have already sought these fees from the First Circuit, which held that the

Plaintiffs' attorneys are *eligible* for fees for this work under 42 U.S.C. § 1988, but then remanded

the matter to this Court to make a fee determination that "weigh[ed] the absence of success by

Plaintiffs on appeal." *See* First Circuit Order p. 2. Based on the entry-by-entry review of their

timesheets, as described in the Hammond Affidavit, they seek approximately $439,000 for the

appeal, $21,140 for billing-related activities,[6] and $39,480 for activities the Plaintiffs' counsel

appear to label as monitoring.[7]

**Period 3: July 2020 – June 2021**. Although the Plaintiffs' attorneys' fee request does

not group their work during this period into particular categories, review of their timesheets filed

in support of the motion reveals that the work falls into five main categories: (1) fees for their

unsuccessful opposition to MassHealth's motion to terminate the Judgment,[8] (2) fees for their

unsuccessful affirmative motions to amend the Judgment,[9] (3) fees for their monitoring of the

---

[5]     *See* Docket No. 971-14, pp. 10-30 (Schwartz: 215.6 hours); Docket No. 971-15, pp. 17-52 (Rucker: 238.3 hours); Docket No. 971-16, pp. 3-8 (Costanzo: 37.5 hours); Docket No. 971-20, pp. 1-2 (Laski: 22.5 hours); Docket No. 971-21, pp. 2-11 (Halston: 39.3 hours; Sujanani: 58.5; Bor-Zale: 65.2 hours)

[6]     *See* Docket No. 971-14, pp. 10-30 (Schwartz: 14.3 hours); Docket No. 971-15, pp. 17-52 (Rucker: 13.5 hours); Docket No. 971-16, pp. 3-8 (Costanzo: 2.4 hours)

[7]     *See* Docket No. 971-14, pp. 10-30 (Schwartz: 15.9 hours); Docket No. 971-15, pp. 17-52 (Rucker: 39.2 hours); Docket No. 971-16, pp. 3-8 (Costanzo: 1.3 hours)

[8]     *See* Docket No. 971-14, pp. 30-65 (Schwartz: 173.8 hours); Docket No. 971-15, pp. 52-90 (Rucker: 166.1 hours); Docket No. 971-16, pp. 8-14 (Costanzo: 25.1 hours); Docket No. 971-18, pp. 1-6 (Detmers: 159 hours); Docket No. 971-19, pp. 8-9 (A. Schwartz: 9.2 hours); Docket No. 971-20, pp. 2-4 (Laski: 21.9 hours); Docket No. 971-21, pp. 12-17 (Halston: 26.1 hours; Palmer: 10.4).

[9]     *See* Docket No. 971-14, pp. 30-65 (Schwartz: 133.6 hours); Docket No. 971-15, pp. 52-90 (Rucker: 169.6 hours); Docket No. 971-16, pp. 8-14 (Costanzo: 17.4 hours); Docket No. 971-18, p. 1 (Detmers: 4.7 hours); Docket No. 971-19, pp. 1-9 (A. Schwartz: 75 hours); Docket No.

(footnote continued)

judgment,[10] (4) fees for time spent contemplating whether to appeal,[11] and (5) fees for billing-related activities.[12] That same entry-by-entry review of their timesheets, as described in the Hammond Affidavit, suggests that the Plaintiffs' attorneys are seeking approximately $332,000 for their work on their unsuccessful opposition to MassHealth's motion to terminate the Judgment, $283,000 for their unsuccessful affirmative motions to amend the Judgment, $17,000 for their time contemplating whether to appeal, $5,000 for activities that they appear to treat as monitoring (even though the Judgment's monitoring provision had long-since expired), and $67,000 for fee-related activities.

**Period 4: July 2021 – November 2021**. Almost all the fees accrued during this period relate to the Plaintiffs' attorneys' assembly of their fee motion, 24-page supporting memorandum, and associated exhibits. Based on an entry-by-entry review of the Plaintiffs' attorneys' timesheets, as described in the Hammond Affidavit, they seek at least $95,000 in fees for this work. *See* Docket No. 971-14, pp. 65-73 (Schwartz: 65 hours at $700/hour); Docket No. 971-15, pp. 90-94 (Rucker: 23.1 hours at $700/hour); Docket No. 971-16, pp. 14-16 (Costanzo: 14.8 hours at $700/hour); Docket No. 971-20, pp. 4-5 (Laski: 8.8 hours at $700/hour); Docket

---

971-20, pp. 2-4 (Laski: 8.3 hours); Docket No. 971-21, pp. 12-17 (Halston: 27 hours; Palmer: 11.1).

[10]     *See* Docket No. 971-14, pp. 30-65 (Schwartz: 1.5 hours); Docket No. 971-15, pp. 52-90 (Rucker: 0.2 hours); Docket No. 971-20, pp. 2-4 (Laski: 5.4 hours)

[11]     *See* Docket No. 971-14, pp. 30-65 (Schwartz: 9.1 hours); Docket No. 971-15, pp. 52-90 (Rucker: 7.8 hours); Docket No. 971-16, pp. 8-14 (Costanzo: 5 hours); Docket No. 971-20, pp. 2-4 (Laski: 2.5 hours)

[12]     *See* Docket No. 971-14, pp. 30-65 (Schwartz: 46.9 hours); Docket No. 971-15, pp. 52-90 (Rucker: 43.5 hours); Docket No. 971-16, pp. 8-14 (Costanzo: 5.1 hours); Docket No. 971-20, pp. 2-4 (Laski: 0.8 hours)

4

No. 971-21 (Halston: 13.3 hours at $700/hour, Palmer: 2.7 hours at $465/hour, and Patel: 11.2 hours at $380/hour).

## ARGUMENT

### I.    The Plaintiffs' Attorneys Are Ineligible for Fees or Costs Under 42 U.S.C. § 1988 for Their Unsuccessful Efforts to Expand the Judgment.

While under 42 U.S.C. § 1988(b), a court may, in its discretion, award attorneys' fees "to the prevailing party" in a federal civil rights action, *see Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602-03 (2001), a prevailing party is not eligible for fees or costs under Section 1988 for unsuccessful post-judgment work that seeks to *expand* a judgment.[13] Indeed, prior to *Buckhannon*, the First Circuit held that attorneys' fee awards under Section 1988 can encompass post-judgment activity where a prevailing party's work was reasonable and necessary for the monitoring of a judgment or settlement, *see, e.g., Garrity v. Sununu*, 752 F.2d 727, 738 (1st Cir. 1984) (affirming a fee award where services in question related to resolving disputes about the implementation of the terms of the previous order),[14] but should not include fees or costs for unsuccessful efforts. *Brewster v. Dukakis*, 786 F.2d 16, 21-22 (1st Cir. 1986) ("The plaintiffs not having prevailed on part of the defendants' appeal and having lost on their cross-appeal" on fee-related issues, must bear their own appellate fees and costs). Since *Buckhannon* clarified the meaning of the phrase "prevailing party," the

---

[13]    Congress enacted the statute as an exception to the "American Rule," where "parties are ordinarily required to bear their own attorney's fees," *Buckhannon*, 532 U.S. at 602, to ensure that federal rights are adequately enforced. *Binta B. v. Gordon*, 710 F.3d 608, 620 (6th Cir. 2013).

[14]    *See also Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986) (declining to depart from standard outlined in *Garrity* for assessing attorneys' fees for post-judgment monitoring efforts); *Burke v. Guiney*, 700 F.2d 767, 771 (1st Cir. 1983) (fee award appropriate for work opposing a stay of execution of the judgment and defending against motion for civil contempt sanctions upon which the execution of the judgment was conditioned).

First Circuit has not issued any ruling finding that a party is eligible for fees or costs for unsuccessful attempts to *expand* a judgment.

Six other circuits have considered fees for post-judgment work since *Buckhannon*. They generally agree that class-action decrees should not become "gravy train[s]" providing plaintiffs' attorneys a "guaranteed lifetime income." *See Johnson v. City of Tulsa, Okla.*, 489 F.3d 1089, 1110 (10th Cir. 2007); *Alliance to End Repress. v. City of Chicago*, 356 F.3d 767, 768-69, 773 (7th Cir. 2004); *see also P.J. by & through W.J. v. Conn. State Bd. of Educ.*, 931 F.3d 156, 166-67 (2d Cir. 2019) (no "sense" in "arrangement in which the mere entry of a consent decree affords a prevailing party's lawyers a 'guaranteed lifetime income'" for losing a series of post-judgment actions, with the expense "charg[ed]" "to the other side").[15] And while most circuits do not even award fees when plaintiffs engage in subsequent, unsuccessful post-judgment efforts to *enforce* a decree, *see, e.g., P.J. by & through W.J*, 931 F.3d at 166-67, 172 (excluding fees for failed motion to enforce from post-judgment fee award),[16] since *Buckhannon*, no circuit has

---

[15]     As the Tenth Circuit observed, Section 1988's fee-shifting regime, properly implemented, "should function to attract competent counsel, but not produce windfalls to attorneys." *See Hackwell v. U.S.*, 491 F.3d 1229, 1240 (10th Cir. 2007); *see also Obenauf v. Frontier Fin. Grp., Inc.*, 785 F.Supp.2d 1188, 1214 (D.N.M. 2011) (plaintiffs' attorneys "should not be encouraged to grow fat off of lackluster cases, or pester the court with trifles in the hopes of capturing large attorneys' fees from dubious claims").

[16]     *See also Binta B. v. Gordon*, 710 F.3d 608, 625, 626 (6th Cir. 2013), citing *Del. Valley*, 478 U.S. at 558-59 ("[c]ompensation for post-consent decree work cannot … be based on a total loss"); *End Repress.*, 356 F.3d at 768-69, 773 (rejecting fee request relating to work unsuccessfully opposing defendant's motion to modify 25-year-old decree and unsuccessfully seeking to find defendant in contempt of decree). These circuits offer divergent reasoning for why success is required. *Compare Conn. State Bd.*, 931 F.3d at 166-67, 172 (reading *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 558-59 (1986), and Second Circuit precedent to preclude fees for severable, unsuccessful efforts) *with Binta B.*, 710 F.3d at 625 (reading *Sole v. Wyner*, 551 U.S. 74, 78 (2007) as precluding Section 1988 fees for efforts that result in a "total loss") *and End Repress.*, 356 F.3d at 768-69, 773 (treating a post-judgment "proceeding to modify a consent decree [as] a discrete phase" of a case, akin to a "free-standing
(footnote continued)

upheld an award of attorney fees for unsuccessful post-judgment efforts that seek to *expand* the judgment. *Binta B.*, 710 F.3d at 622 (no fees when "plaintiffs' counsel's efforts … best … characterized as a failed attempt to expand the remedy"). Therefore, this Court should, at a minimum, find that the Plaintiffs' attorneys are categorically ineligible for fees and costs under Section 1988 for any effort properly categorized as work to *expand* the judgment. *See U.S. v. Tenn.*, 780 F.3d 332, 339 (6th Cir. 2015) (no need to pick approach where plaintiffs not entitled to fees under either one); *see also Frew v. Taylor*, 688 Fed. Appx. 249, 256 (5th Cir. 2017) (similar).

Here, much of the plaintiffs' attorneys' work since 2018 is best categorized as unsuccessful efforts to *expand* the Judgment. This includes the approximately $283,000 in fees they seek for their three unsuccessful motions to expand the Judgment filed in 2020 and 2021:

- Plaintiffs' Motion to Modify Paragraph 52 of the Judgment and to Reinstate Court Monitoring and Reporting (Docket No. 910);

- Plaintiffs' Motion to Modify the Judgment to Incorporate the Defendants' EPSDT Timeliness Standard for Remedial Services (Docket No. 918); and,

- Plaintiffs' Motion to Modify the Judgment to Incorporate Outpatient Therapy (Docket No. 920).

---

suit" and requiring, under *Buckhannon*, the party seeking fees to have prevailed in that aspect of the proceeding).

Other circuits have awarded fees for unsuccessful enforcement efforts, at least in some circumstances. *See Ballo v. Idaho*, 677 F.3d 910, 918, 920 (9th Cir. 2012) (awarding fees for unsuccessful contempt motion seeking to enforce original decree because State brought itself into compliance after filing of the motion); *Cody v. Hillard*, 304 F.3d 767, 773 (8th Cir. 2002) (lack of success no impediment to fees if work a "necessary adjunct to the initial litigation" and "inextricably intertwined with" the underlying suit). Additionally, the Tenth Circuit has likewise rejected a strict application of *Buckhannon* to post-judgment attorney's fee requests, reaching what it characterized as "an intermediate position." *Johnson*, 498 F.3d. at 1103, 1108-09 (reasonable post-judgment efforts to enforce the fruits of the decree are compensable); *see also id*. at 1108-09 (cautioning that "'fruit of the decree' is a properly functioning mechanism, not the elimination of the problem addressed by the mechanism").

*See also supra*, pp. 3-4. It also includes the approximately $77,000 in fees they seek for the
unsuccessful affirmative motion to amend the Judgment that the Plaintiffs filed in 2018. *See*
Docket No. 847 (Plaintiffs' Motion to Approve and Order Disengagement Measures, Actions to
Improve Access to Remedial Services, and Provisions on Outpatient Services); see also supra,
pp. 2-3. And finally, it includes (1) $332,000 in fees they seek for their unsuccessful effort to
oppose termination of the Judgment, *see infra*, pp. 14-16, as their opposition was really a
backdoor effort to expand the Judgment, and (2) the approximately $580,000 in fees they seek
for their efforts to oppose the Commonwealth's 2018 request to give effect to the express
provision in the Judgment providing that monitoring and reporting shall end after five years, both
in the District Court and on appeal in the First Circuit, as the First Circuit has already held that
those were affirmative efforts by Plaintiffs to expand the Judgment. *See infra*, pp. 12-14.[17]

In sum, this Court should find that Plaintiffs' attorneys are *ineligible* for fees under
Section 1988 for all of their unsuccessful efforts to expand the Judgment.

## II. Even If the Plaintiffs' Attorneys Are Eligible for Fees Under Section 1988, They Are Not Entitled to Fees for Their Work Since July 2018 Due to Their Complete Lack of Success.

That a party is *eligible* for attorneys' fees has no bearing on whether that party is *entitled*
to such fees. Indeed, as the Supreme Court has recognized, "[i]n some circumstances, even a
plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." *Farrar v.
Hobby*, 506 U.S. 103, 115 (1992). *See also Boston's Children First v. City of Bos.*, 395 F.3d 10,
14 (1st Cir. 2005) ("court may properly deny a prevailing party's motion for attorney's fees if
circumstances of the case would make a fee award unjust."). Further, "the most critical factor [in

---

[17]     In recognition of the First Circuit's order that the plaintiffs' attorneys are *eligible for* (but
not necessarily *entitled to*) attorneys' fees under Section 1988 for their work on the appeal, the
Commonwealth raises this latter point about appellate fees solely to preserve it for any appeal,
should it later determine that one is warranted.

making this determination] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S.
424, 436 (1983). Thus, given the Plaintiffs' attorneys' wholesale lack of success on their *Rosie
D.*-related efforts since July 1, 2018 (all explained in greater detail below), their fee request is
not reasonable and this Court should decline to award them fees for those efforts. *See Joyce v.
Town of Dennis*, 720 F.3d 12, 31 (1st Cir. 2013) ("a fees award should reflect the plaintiff's level
of success," particularly where the efforts "achieved only modest results"); *Brewster v. Dukakis*,
3 F.3d 488, 494 (1st Cir. 1993) (no fees for unsuccessful affirmative motions); *Brewster v.
Dukakis*, 786 F.2d 16, 21-22 (1st Cir. 1986) (declining to award fees for unsuccessful efforts to
expand the judgment's terms).

A.    **Plaintiffs' Attorneys Are Not Entitled to Fees or Costs for Their Unsuccessful
      Motions to Expand the Judgment.**

The Plaintiffs' attorneys' request for fees for their unsuccessful motions to expand the
Judgment should be soundly rejected. Their request presents a paradigmatic example of a
plaintiff asking the Court to compensate its attorneys for work they performed in attempting,
*without success*, to expand the scope of the judgment they had already won and runs afoul of the
case law cited above.

Specifically, much of the Plaintiffs' effort between July 2020 and June 2021 was focused
on petitioning the Court to make three substantive modifications to the 2007 Judgment, in all
instances seeking to add new obligations that did not appear in the original Judgment. *See supra*,
pp. 3-4. One requested modification would have required the Defendants to incorporate certain
voluntary actions pertaining to outpatient therapists' delivery of care coordination into the
Judgment. Another request sought to amend the Judgment to dictate how quickly a child must
receive his or her first appointment with an Intensive Care Coordination ("ICC") or In-Home
Therapy ("IHT") provider. Both requested modifications were unequivocally denied by this

9

Court. *See* Docket No. 963, pp. 1-2, 7-12. And the third request sought to further extend the Judgment's monitoring and reporting provision, expressly contemplated by the Judgment as a five-year term and subsequently extended by agreement of the parties through 2018. *Id*., p. 18. Under the *Hensley* standard, the Defendants—and by extension, the taxpayers of the Commonwealth—are not obligated to pay Plaintiffs' counsel for their unsuccessful attempts to expand the breadth of the Judgment more than a decade after it was entered.[18]

The Plaintiffs' attempts to make these specific alterations to the Judgment actually pre-date the billing period at issue here. In February 2017, the Plaintiffs filed two substantially similar motions seeking to expand the Judgment.[19] *See* Docket Nos. 776 & 777. The Court (Ponsor, J.) denied both motions without prejudice. *See* Docket No. 815 (dated September 27, 2017). Later, during the billing period at issue here, the Plaintiffs renewed the same requests (filing an omnibus motion to modify the Judgment with respect to both timeliness of ICC and IHT services and the addition of a term related to the delivery of care-coordination services by

---

[18]    The Eighth Circuit's decision in *Association for Retarded Citizens of North Dakota v. Schafer*, 83 F.3d 1008, 1012-13 (1996), is particularly informative on this point. In *Schafer*, the initial litigation yielded a permanent injunction. After the substantial improvement of services by the defendant state agency, the court granted the government's motion to partially overrule the injunction. The plaintiffs' opposition to this motion was unsuccessful, but they still sought attorneys' fees for those efforts. The Eighth Circuit held that plaintiffs' limited success did not entitle them to any fees in excess of what they had already been paid for post-judgment monitoring, *see id.*, a position it reaffirmed in 2002. *See Hillard*, 304 F.3d at 773 (no attorneys' fees for unsuccessful efforts to expand the scope or duration of the judgment while noting that "[P]laintiffs cannot over-litigate. Postjudgment litigation, like all work under the fee-shifting statutes, must be reasonable in degree. Services that were redundant, inefficient, or simply unnecessary are not compensable.").

[19]    One of these motions, Docket No. 776, was couched as a motion to incorporate the fruits of certain of the parties' "disengagement" negotiations as enforceable terms of the Judgment. One of the "disengagement" criteria would have required a year-over-year increase in the percentage of children newly referred to ICC who received their first appointment within 14 days. The net effect sought in that motion, thus, was the same: a fixed and enforceable timeframe within which ICC services must be made available to each child deemed eligible to receive them.

outpatient therapists, *see* Docket No. 847), while also urging the Court to expand the Judgment's monitoring requirements.[20] The Court (Ponsor, J.) once again denied the motion without prejudice, *see* Docket No. 881, citing the pendency of the Defendants' appeal. And while the District Court did extend the Judgment's monitoring provision, as Plaintiffs had requested, the First Circuit vacated that decision on appeal.

Finally, after jurisdiction over the case returned to this Court on remand, the Plaintiffs once again renewed their requests for these same substantive modifications to the Judgment. *See* Docket Nos. 910, 918, 920. In its June 19, 2021, Order terminating the Judgment, this Court (Stearns, J.) denied all three of the modification requests with prejudice. With respect to the motion to set access standards for ICC and IHT, the Court held that the Plaintiffs' request exceeded the scope and purpose of the original Judgment. *See* Docket No. 963, pp. 8-9 ("[T]he purpose of the Judgment was to remedy defendants' failure to timely and predictably provide EPSDT services to children with severe emotional distress (SED), not to guarantee a specific envelope of time during which such services would be provided."). The Court likewise rejected the motion to prescribe care coordination services in an outpatient setting, noting that "the Judgment as written does not require the implementation of care coordination for children who do not elect ICC." Docket No. 963, p. 12. And because the Court determined that the Commonwealth had satisfied the Judgment, it appropriately determined that no further monitoring was necessary. *Id*. at 18.

---

[20]     In his affidavit, Plaintiffs' lead counsel states that he "excluded altogether … all of the time [he] spent on" Plaintiffs' August 18, 2018, motions. *See* Docket No. 971-5, ¶ 20. Yet at least the first month's worth of "[b]illable" entries on his timesheet all appear to concern those motions. *See* Docket No. 971-14 (entries for July 2, 2018, through August 6, 2018) (*e.g.*, "Telephone conference call … re: affidavit in support of motion to approve [disengagement measures]"). And review of timesheet entries for Plaintiffs' attorneys demonstrates that they collectively appear to request $77,000 in fees for this work. *See supra*, pp. 2-3; Hammond Aff., ¶ 7.

In short, the Plaintiffs' persistent attempts to add these three new substantive requirements to the Judgment—undertaken during Period 1 and Period 3 of the current billing cycle—(a) were unequivocal attempts to expand, rather than enforce, the original Judgment; and (b) met with no success. As such, under the clear standard articulated in *Hensley* and adopted by the First Circuit in *Brewster*, the Plaintiffs are entitled to no award of attorneys' fees to defray the cost of their attorneys' work on these motions. *See also Joyce*, 720 F.3d at 31; *Ass'n for Retarded Citizens of N.D. v. Schafer*, 83 F.3d 1008, 1012 (8th Cir. 1996) ("A prevailing party who aggressively seeks a greater victory and fails is entitled to a proportionally lesser fee award"); *Cody v. Hillard*, 304 F.3d 767, 773 (8th Cir. 2002) ("[P]laintiffs cannot over-litigate. Postjudgment litigation [activities] … that were redundant, inefficient, or simply unnecessary are not compensable."). All such fees requested in their timesheets (approximately $360,000, *see supra*, pp. 2-4) should therefore be segregated and excluded. *U.S. v. One Star Class Sloop Sailboat Built in 1930 With Hull No. 721 Named Flash II*, 546 F.3d 26, 39 (1st Cir. 2008) (when the claims "themselves are separate and distinct, an inquiring court may simply exclude time spent in litigating the unsuccessful claims"); *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 337 (1st Cir. 1997) ("The Court can segregate time spent on certain unsuccessful claims").

### B.    Plaintiffs' Counsel Are Not Entitled to Fees or Costs for Their Unsuccessful Opposition to Relief Expressly Provided in the Judgment.

Plaintiffs' attorneys' request for approximately $580,000 in fees for their ultimately unsuccessful work in this Court and before the First Circuit opposing the Commonwealth's motion to terminate monitoring should meet a similar fate. This is because the Commonwealth's motion to terminate monitoring did "not ask[] [the District Court] to modify or terminate the Judgment in this case." *Rosie D. by John D. v. Baker*, 958 F.3d 51, 54-56 (1st Cir. 2020). Rather,

all the Commonwealth asked was for the District Court to give effect to the express provision in the Judgment providing that monitoring and reporting shall end after five years. *Id.* at 55; Judgment, ¶ 52. When Plaintiffs opposed the Commonwealth's request to give effect to that provision, they took a position *contrary* to the Judgment's express terms, and were effectively attempting to modify the Judgment. In maintaining their position both on appeal and in petitioning for *en banc* review, Plaintiffs' counsel bypassed multiple opportunities to change course (*e.g.*, during the First Circuit's mediation process, after the Commonwealth filed its opening brief, or even after the First Circuit issued its decision), seemingly confident that their initial success in this Court would inoculate them against any risk going forward, regardless of the merits of their decision. *See Conn. State Bd.*, 931 F.3d at 172 (that unsuccessful effort could have been avoided is a reason to deny fees); *End Repression*, 356 F.3d at 773. And while they may have felt compelled to undertake those efforts, they should not receive an additional, undeserved windfall, on top of the millions they have already received from the Commonwealth's taxpayers, for their decision to oppose relief expressly provided in the Judgment itself. *See End Repress.*, 356 F.3d at 773 ("[plaintiff's attorneys could not appropriate for themselves a guaranteed lifetime income by bringing and losing a series of actions … and charging the expense to the [municipal defendant] and thus to the taxpayers"); *Binta B.*, 710 F.3d at 625 (no fees for post-consent decree work that was "a total loss," as Section "1988 was not enacted to create a cottage industry for class action attorneys" granting them "lifetime income").

Nor do Plaintiffs' efforts to extend the monitoring period here fall under the umbrella outlined by the First Circuit in *Brewster*. *See* 786 F.2d at 19 (recognizing the availability of fees for post-judgment work that is useful and ordinarily necessary, or for services necessary for reasonable monitoring). Plaintiffs' efforts here were neither "useful" nor "ordinarily necessary"; nor were they "necessary for reasonable monitoring," which had already occurred as agreed. Far

from any of these descriptors, Plaintiffs' efforts to extend the monitoring period were affirmative efforts to effectively expand the Judgment that they undertook once the agreed upon extension of the monitoring was set to terminate on December 31, 2018. *See also Schafer*, 83 F.3d at 1012 ("in compensating post-judgment monitoring, we must avoid creating a framework in which 'the decree institutionalizes the attorney, as well as the system.'") (quoting *Brewster*, 786 F.2d at 18). And this Court should not permit them to fall back on Section 1988 to relieve them of the consequences of their unsuccessful litigation strategy. *See Farrar*, 506 U.S. at 121-22 (O'Connor, J., concurring) (basing the availability of attorneys' fees in part on whether litigation "accomplished some public goal other than occupying the time and energy of counsel, court, and client," and stating that "[s]ection 1988 is not 'a relief Act for lawyers.'") (quoting *Riverside v. Rivera*, 477 U.S. 561, 588 (1986) (Rehnquist, J., dissenting)).

In sum, a fee award under Section 1988 is not an invitation to Plaintiffs' attorneys to attempt to indefinitely prolong post-Judgment monitoring, especially when the Judgment expressly called for it to end after five years. As with Plaintiffs' counsel's other affirmative efforts to expand the Judgment, *see supra*, pp. 9-12, the Commonwealth's taxpayers should not be obligated to pay them for their unsuccessful efforts. Accordingly, the approximately $580,000 in fees and costs related to Plaintiffs' counsel's opposition to the motion to terminate monitoring and reporting, *see supra*, pp. 1-3, should be segregated and excluded.

### C. Plaintiffs' Attorneys Are Not Entitled to Fees for Their Unsuccessful Effort to Oppose the Commonwealth's Motion to Terminate the Judgment.

Most of what remains of the Plaintiffs' fee request involves approximately $332,000 in fees incurred in opposing the Defendants' motion to terminate the Judgment, which was filed in February 2021. It is undisputed that Plaintiffs' opposition to this motion was wholly

unsuccessful—on June 19, 2021, the Court granted the Defendants' motion, terminating the Judgment and effectively ending this case. Docket No. 963, pp. 1, 12-18, 20.

As noted above, the applicable case law under Section 1988 distinguishes between fees expended in attempting to *protect* a judgment (which may be compensable) and fees expended in attempting to *expand* a judgment (which are generally compensable only to the extent that the attempt proves successful). Ordinarily, one might expect that contesting a defendant's request to terminate a judgment would fall on the former side of that line. But, given the nature of the Defendants' motion—and, critically, the grounds on which it was allowed—that is not the case here.

The Defendants' termination motion did not seek to displace, vitiate, or excuse non-compliance with any term of the original Judgment. On the contrary, the Defendants moved, pursuant to the first prong of Fed. R. Civ. P. 60(b)(5), to terminate the Judgment *because they had already fully implemented it*. To support their request, the Defendants filed a robust Statement of Material Facts, detailing what they had done to satisfy each affirmative obligation imposed by the Judgment. *See* Docket No. 938.

The Court clearly understood the nature of the Defendants' request, and, in granting it, limited its inquiry to whether the Defendants had in fact done what the Judgment required them to do. As this Court concluded: "In sum, because defendants have offered persuasive evidence that they have substantially complied with the requirements of the Judgment as written, the court will return 'responsibility for discharging the State's obligations' to defendants and terminate the Judgment *as satisfied*." Docket No. 963, p. 17, quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004) (emphasis added). As this Court's Order acknowledged, the Defendants accepted "the Judgment as written" as the standard they were obligated to meet. As such, in

moving to terminate that Judgment, the Defendants made no incursion against the terms of the Judgment such that the Plaintiffs were obligated to "protect" it.

In opposing the termination motion, the Plaintiffs scarcely challenged the Defendants' evidence regarding the steps they had taken to implement the Judgment's terms. *See* Docket No. 963, p. 12 ("Plaintiffs challenge only a small portion of this history" regarding Defendants' "section-by-section account of their historical effort to comply with the Judgment"). Instead, the Plaintiffs, by the Court's count, offered six discrete arguments as to why the Judgment should remain in effect. As the Court summarized it, *id.* at 13-17, two of these proffered objections sought to hold the Defendants accountable for allegedly failing to achieve outcomes that the First Circuit had expressly found to lie outside the scope of the Judgment (*see* discussion of Plaintiffs' first and fifth arguments). The Court described the remaining attacks as suggestions that "the defendants have not sufficiently met the optimum goals" for structuring or delivering certain remedy services. *Id.* at 13. The Court went on to reject each of the six arguments, explaining why adopting each critique would either (a) require the Defendants to meet a standard or perform a task not imposed by the Judgment; (b) violate basic tenets of federalism; or (c) both. *Id.* at 13-17.

Simply stated, while Plaintiffs couched their opposition to the Defendants' motion as an attempt to protect the 2007 Judgment against premature sunset, in reality it was nothing of the kind. Had the Plaintiffs' efforts been successful (which they decidedly were not), the net result would have been the perpetuation of a fully implemented Judgment until such time as Defendants had completed tasks and attained results not required of them under the Judgment's actual terms. Seen in that light, the Plaintiffs' opposition is properly characterized not as a defense of the Judgment, but as an unsuccessful attempt to expand it—the very thing for which

*Hensley* and its progeny bar the award of fees from the public fisc. *See*, *e.g.*, *Binta B.,* 710 F.3d at 622 ("failed attempt to expand the remedy" not compensable under Section 1988).[21]

### D.   Plaintiffs' Attorneys Are Not Entitled to Fees for the Limited Monitoring They Engaged in After December 31, 2018.

Plaintiffs also seek fees for their efforts in monitoring the Judgment, the majority of which was incurred after December 31, 2018. Because the monitoring period under the Judgment ended on that date, however, all requested fees for monitoring the Judgment that arose after that date (approximately $44,000, based on a review of Plaintiffs' counsel's timesheets, *see supra*, pp. 1-4) should be disallowed and segregated and excluded from Plaintiffs' request.

Paragraph 52 of the Judgment stated that all "monitoring and reporting" functions under the Judgment would "terminate" five years from the date of the Judgment—*i.e.*, on June 16, 2012. In reality, however, this Court, upon agreement of the parties, on numerous occasions extended that period (and with it, the tenure of the Court Monitor). The final extension left monitoring and reporting requirements in place until December 31, 2018. When the Defendants declined to assent to any further enlargement of the monitoring period, the Court directed them to file a motion requesting that monitoring come to an end. When Defendants filed that motion in the summer of 2018, the Court denied it.

On appeal, the First Circuit reversed, holding that since the Judgment itself specified when monitoring would end, in the absence of consensus it was incumbent upon the Plaintiffs to demonstrate cause as to why the Judgment should be amended to lengthen the monitoring period.

---

[21]     The "degree of success obtained" by a plaintiff's opposition to the termination of the judgment remains the "most critical factor" for the compensability of that effort. *See Hensley*, 461 U.S. at 436. In *Cody v. Hillard*, the Eighth Circuit awarded fees to plaintiffs' attorneys due to their partial success on appeal from the termination of the consent decree. *Cody*, 304 F.3d at 773-75. Here, by contrast, Plaintiffs' opposition to the termination of the Judgment is not compensable due to the ultimate failure of that effort in this Court.

As they never successfully did so—their post-remand motion to reinstitute monitoring was denied as moot, *see* Docket No. 963 at 18—the monitoring provisions of the Judgment terminated on December 31, 2018. Any fees the Plaintiffs incurred for monitoring after that date were neither required nor sanctioned by the Judgment and, accordingly, are not properly compensable.

> ### E.    Any Award of Fees for Time Spent on Billing-Related Activities Should Be Contingent on Plaintiffs' Underlying Success on Discrete Aspects of This Fee Dispute.

Plaintiffs' counsel also expended a substantial amount of time on billing-related activities. Indeed, based on the Commonwealth's entry-by-entry review of their timesheets, approximately 14 percent of the fees they now seek is attributable to that work. *See* supra, pp. 2-4. But to the extent Plaintiffs' counsel are entitled to any fees for this work, the award should be contingent on their success on discrete aspects of this fee dispute. *See, e.g., Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978) ("if the attorney's initial claims are exorbitant, or the time spent advancing them unreasonable, the district court should refuse the further compensation [for time spent preparing and/or litigating fee request]."). So, for example, if Plaintiffs' counsel are not able to successfully establish that they are entitled to fees for their affirmative motions to expand the Judgment, *see supra*, pp. 5-12, they also should not be awarded fees for the work associated with assembling that portion of their fee request. And until Plaintiffs' counsel are found to be entitled to any fees for any discrete category of work, the approximately $185,000 in fees related to billing activities should be segregated and excluded from their fee request.

III.     **Even If This Court Determines that the Plaintiffs' Attorneys Are Eligible for and Entitled to Fees in Any of the Categories Set Forth Above, an Entry-By-Entry Review of Their Timesheets Is Necessary to Ensure that Their Efforts Are Properly Categorized.**

In their memorandum, Plaintiffs' counsel identify similar discrete categories to those identified by the Commonwealth. *Compare* Plt. Mem. pp. 8-14 *with supra*, pp. 8-18. And they go on to argue that they are entitled to fees for all of the discrete categories addressed in Section II above. *Id*. Yet their memorandum makes no effort to identify the *amount* they claim they are due within each category. *See id*. Likewise, their individual timesheets, which identify specific work each attorney performed by date, offer only a "Grand Total" at the end, *see, e.g.,* Docket No. 971-14, p. 73, listing no sub-totals on a category-by-category basis. See Hammond Affidavit, ¶¶ 2-8)

This omission is significant, and one entirely within Plaintiffs' counsel's control. And while the Commonwealth had issues with how some of the individual entries were categorized, making such a challenge now is not even possible because Plaintiffs' attorneys have not offered any sub-categorization of their work in their filings (let alone a meaningful one with which the Commonwealth can engage). The Commonwealth should not be required to further ferret through each attorneys' individual time sheets and perform those calculations in the first instance, especially where Plaintiffs' counsel appear to have made a strategic decision not to do so here.

Where there are still live issues over the broad strokes of this dispute (*i.e.*, whether Plaintiffs' counsel are (1) eligible for or (2) entitled to any of these discrete categories of fees), this Court should resolve those issues first. Based on the outcome of that dispute, Plaintiffs' counsel should then be required to submit a revised fee request that offers a categorical entry-by-

19

entry breakdown of hours worked for any category where this Court finds that they are both eligible for and entitled to fees for that work.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny the Plaintiffs' Motion for Attorney Fees. And in the event this Court finds that Plaintiffs' counsel are both eligible for and entitled to fees for certain, specific categories of work, it should require Plaintiffs' counsel to submit a revised fee request that offers a categorical entry-by-entry breakdown of hours worked for any category that can be reviewed and, if necessary, challenged by the Commonwealth.

Respectfully submitted,

MASSACHUSETTS EXECUTIVE
OFFICE OF HEALTH AND
HUMAN SERVICES

By its attorney,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Daniel J. Hammond
Daniel J. Hammond, BBO #559475
Douglas S. Martland, BBO #662248
Assistant Attorneys General
Government Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2078/2062
dan.hammond@mass.gov
douglas.martland@mass.gov

On the Memorandum:
Thomas Duff
S.J.C. Rule 3:03 Law Student

Dated: February 4, 2022

## <u>CERTIFICATE OF SERVICE</u>

     I, Douglas S. Martland, Assistant Attorney General, hereby certify that the foregoing document, which was filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 4, 2022.

<u>/s/ Douglas S. Martland</u>
Douglas S. Martland
