UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Rosie D., *et al,*   )
                     )
        Plaintiffs,  )
                     )
v.                   )   C.A. No. 01-30199-RGS
                     )
Charles Baker, *et al,*  )
                     )
        Defendants.  )
                     )

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR A FINAL AWARD OF ATTORNEYS' FEES AND COSTS**

**I.     Introduction**

The plaintiffs' Motion for Fees and Costs (Doc. 970) and attached exhibits (Docs. 971-1 through 20) provided detailed time entries, attorney affidavits, and expert declarations sufficient to allow the Court to make a judgment about their entitlement to fees and the reasonableness of their fee request.[1] The accompanying Memorandum (Doc. 971) demonstrated why the plaintiffs are entitled to an award of fees as described in Exhibit 1 (Doc. 971-1), based upon this Court's prior decisions awarding the plaintiffs fees for implementation activities that are reasonable and necessary, regardless of whether they are successful in each of those efforts, *Rosie D. v. Patrick,* 593 F. Supp. 2d 325 (D. Mass. 2009); *Rosie D. v. Patrick,* 759 F. Supp. 2d 146, 150-52 (D. Mass. 2011), and the opinions of numerous courts of appeals similarly holding that eligibility for fees for post-judgment activities is not measured exclusively by the outcome of those efforts. Mem. at 1-3, 9-13.

The defendants' Opposition (Doc. 974) does not challenge the reasonableness of the time spent on specific activities or the requested hourly rates. Instead, it attempts to reframe the plaintiffs' opposition to the defendants' 2018 and 2021 motions to terminate and assertions of substantial compliance, as efforts to expand and modify the Judgment.[2] By mischaracterizing

---

[1] The attached affidavits and fee charts documented that the plaintiffs voluntarily excluded over 790 hours – or approximately 25% -- of the time spent on implementation activities, and then proposed an additional 10% reduction that equates to over 232 hours of time spent on these activities. *See* Docs. 971-2-4.

[2] The defendants' analysis and categorization of time entries, Doc. 975, improperly *included* a significant number of hours that were listed in their time entries but actually *excluded* in the final fee request. They also ignore the further 10% reduction. As a result, the defendants' calculations erroneously conclude that the plaintiffs are seeking $1,524,970 in fees, when in fact, their actual request is $1,310,648 – a dramatic difference of more than $214,000. *Compare* Doc. 971-1, Col. 4 with Doc. 975 at 3-4.

While the plaintiffs disagree with the defendants' efforts to reframe the nature and posture of the various motions at issue, the plaintiffs can provide the Court with an allocation of time by type of motion/activity, if that would be helpful to the Court's review.

1

the plaintiffs' motion and ignoring this Court's prior decisions on the relevance of success on discrete implementation activities, the Opposition argues that the plaintiffs are entitled to no fees for their work over the past three years.  Far from seeking a "guaranteed lifetime income" or a "windfall," Opp. at 6, plaintiffs' counsel at all times acted consistent with their fiduciary duties to the class of vulnerable youth in need of mental health services and in support of the Judgment.  Because the plaintiffs were ethically bound to defend the fruits of their victory as prevailing parties in this case, and because their affirmative motions submitted in 2020 were done at the direction of this Court and the Court of Appeals, the Court should award the fees requested in their Motion.

## II. The Defendants Do Not Object to the Reasonableness of the Time, the Completeness of the Time Entries, or the Requested Hourly Rates in the Plaintiffs' Fee Motion.

The defendants' Opposition does not challenge any specific time entry, the details or propriety of any entry, or the amount of time spent on any specific activity or category of activities.  It makes no claim that the specific number of hours or the number of attorneys working on a particular task was unreasonable, excessive, duplicative, or unnecessary.  Nor does the Opposition challenge the hourly rates requested by any of the plaintiffs' counsel, present independent evidence of market rates, or respond in any manner to the rate declaration of Stuart Rossman (Doc. 971-13).  Therefore, as the First Circuit has held, the defendants have waived any objection to the reasonableness of the time or the hourly rates requested in the plaintiffs' Motion.  *Hutchinson v. Patrick*, 636 F.3d 1, 16-17 (1st Cir. 2011) (failure to challenge elements of a claim or present facts in support of a challenge constitutes a waiver).

### III. The Plaintiffs Are Entitled to their Requested Fees for Opposing the Defendants' Motions to Terminate in the District Court and in the First Circuit.

The defendants' 2018 Motion to Terminate (Doc. 848) was a comprehensive claim of compliance with the entire Judgment, supported by a 38-page memorandum (Doc. 854), a detailed Statement of Material Facts (SMF) (Doc. 855), and almost 1,000 pages of exhibits that exhaustively reviewed every provision of the Judgment and asserted substantial compliance with every obligation under the Judgment. The entire focus of the Motion and the supporting materials was to demonstrate that the defendants had substantially complied with every provision of the Judgment, and, in fact, had been in compliance for more than six years. Mem. at 38 ("the Court should find that the Commonwealth has substantially complied, in all material respects, with this Court's 2007 Judgment").

The defendants decidedly did not limit their motion to the necessity for ongoing monitoring and reporting, or to a legal argument that the Judgment (¶ 52) required termination of the Monitor. They did not argue, as they do now, Opp. at 12-14, that the five-year timeline in ¶ 52 should have been enforced despite years of voluntary extensions. To the contrary, they specifically requested not only that monitoring and reporting terminate, but also that the Court "should bring to a close all active judicial oversight of the Commonwealth in this matter." *Id.* The defendants could have simply said five years had passed, the Judgment's provisions on monitoring and reporting had ceased, and that any extension of the monitoring period required a modification of the Judgment – as the First Circuit ultimately held. But they did not. Instead, they presented a comprehensive compliance motion that asked the Court to terminate its oversight of the Judgment.

Given the unresolved disputes concerning compliance in 2018, and this Court's stated view that noncompliance warranted the continuation of monitoring and reporting, it was

3

necessary for the plaintiffs to oppose the motion. Doing so was consistent with their ethical obligations as class counsel to protect the fruits of the Judgment and to maintain the Court's ability to continue to effectively exercise is oversight responsibilities. *See* Klonoff Aff. at 11-12, Doc. 971-12). The plaintiffs presented a straightforward opposition to a claim of compliance using the defendants' own data. Doc. 857 at 7-24; Doc. 858-1, 2, 6-11. Characterizing a traditional opposition to a motion to terminate a court order as a "backdoor" motion to expand that order, Opp. at 8, is a complete mischaracterization of the plaintiffs' efforts, and the caption and explicit purpose of the defendants' own motion.[3] Klonoff Aff. at 13 (disagreeing that opposition was a *de facto* motion to modify and noting that contested compliance issues "were all 'inextricably intertwined' with the Judgment itself").

Moreover, the Court never viewed the defendants' Motion to Terminate as anything other than a claim of compliance with the Judgment. Judge Ponsor's opinion focused entirely on this claim, and concluded that the defendants were far from achieving substantial compliance with the Court's orders. *Rosie D. v. Baker*, 362 F. Supp. 3d 46, 48 (D. Mass. 2019) (denying the defendants' Motion Regarding Substantial Compliance because "Defendants are still grossly failing to comply…").

The defendants' appeal of the Court's decision similarly claimed that they had substantially complied with the Judgment, triggering the plaintiffs' obligations to protect their victory below. Klonoff Aff. at 13. Like their ethical duty to oppose an effort to end all judicial oversight of the Judgment, the plaintiffs had an obligation to defend this Court's 2019 Order on appeal. *Id.* at 13-14 ("It is inconceivable… consistent with their ethical obligations, class

---

[3] This recent reframing, at least with respect to provisions concerning assessments and care coordination, was never argued in the defendants' Reply. *See* Doc. 865 at 1-8.

4

counsel could have declined to participate in the appeal and allowed the First Circuit to grant the relief sought by defendants").

Similarly, the defendants' 2021 Motion to Terminate entirely focused on their compliance with the Judgment.[4] There were undeniably contested facts concerning compliance, as evidenced by the defendants' own data, affidavits from family and provider organizations, Docs. 955-2-4, as well as the expert opinions of an esteemed child psychiatrist, a nationally-recognized expert in home-based services, and a former federal Medicaid official. *Id.* 955-5-7. These disputed facts concerning compliance, coupled with the plaintiffs' ethical duty to the class, rendered their efforts to preserve "the fruits of their victory" reasonable and necessary monitoring activities, for which they are entitled to attorneys' fees. *See* Pls. Memo at 6-10.

Courts routinely award plaintiffs attorneys' fees for reasonable and necessary post-judgment activities, which certainly include defending a court's remedial order, directly and on appeal, regardless of the degree of success. Mem. at 9-10, 11-13. The First Circuit has acknowledged both the entitlement to and the eligibility for reasonable fees in this case, noting that the proper test is whether the post-judgment work is "ordinarily necessary", citing *Brewster v. Dukakis,* 786 F.2d 16, 19 (1st Cir. 1986). *See* Nov. 3 Order ("We find unavailing the Commonwealth's arguments that the law in this Circuit *or the facts of this case* wholly preclude Plaintiff from recovering § 1988 fees and costs for work done on the instant appeal") (emphasis supplied). *See also Cody v. Hillard,* 304 F.3d 767, 775 (8th Cir. 2002) (defending remedy is inextricably intertwined with the underlying litigation and necessary to preserve the benefits of

---

[4] Once again, the motion was supported by a lengthy memorandum (Doc. 937), a detailed Statement of Material Facts (SMF) (Doc. 938), and almost a thousand pages of exhibits that exhaustively reviewed every provision of the Judgment and asserted substantial compliance with every obligation under the Judgment.

5

the remedial order). Because there were significant disputes concerning the Commonwealth's compliance with the Judgment, as this Court initially found, opposing the 2018 and 2021 motions to terminate was certainly appropriate, reasonable, and necessary to preserve the fruits of the remedial order. Therefore, the plaintiffs are entitled to their requested fees of $989,658 for defending the Judgment, even though they did not ultimately prevail.

**IV.     The Plaintiffs Are Entitled to their Requested Fees for Seeking to Conform the Judgment to the Court's Understanding of Its Order and in Response to Its Direction.**

The plaintiffs' 2020 motions to modify (Docs. 910, 918, 920) were necessary to protect the Judgment, conform it to the Court's stated interpretation of its own remedial order, and directly incorporate prior rulings of this Court on timeliness, outpatient care coordination, and court monitoring. Specifically, the motion on timely access sought to enforce the Court's 2012 remedial order adopting the defendants' revised access standard into the Judgment. Doc. 571. The motion on outpatient care coordination sought to reflect the Court's understanding of its Judgment, given the defendants' unilateral decision to provide care coordination using outpatient providers. Doc. 815 at 2 ("care coordination measure is critical, regardless of what label (Outpatient Therapy or otherwise)) is placed upon the program component that will carry it out."). Finally, the motion to continue reporting and monitoring was necessary to ensure that the Court had sufficient information to assess compliance.[5]

---

[5] "Complete termination of monitoring and supervision at this time, however, would require the court to turn a blind eye to Defendants' persistent, substantial violation of the remedial order - a violation that continues to put many SED children at serious risk of harm." Doc. 877 at 7. Ultimately, this Court did decide to extend the Court Monitor's involvement as requested by the plaintiffs, albeit in the role of technical advisor. Doc. 945.

The defendants' attempt to characterize the plaintiffs' 2018 motion to modify[6] and their 2020 motions as unreasonable expansions of the Judgment, Opp. at 12-13, is contrary to the Court's prior orders concerning timely access to services, care coordination, and monitoring, as well as its findings with respect to the motions themselves.  Doc. 881 at 4, 6 (dismissing the 2018 consolidated Motion without prejudice but observing that it "offer(s) strong arguments" and the relief requested "[has] force").  The First Circuit's remand made clear that formal modification was necessary in order to conform the Judgment to the Court's prior orders on timely access and outpatient care coordination, and to the realities of the defendants' implementation.  *Rosie D. v. Baker,* 958 F.3d 51, 59 (1st Cir. 2020).

Disputes regarding timely access to services, adequate care coordination, and court monitoring have animated this Court's decisions for many years.  The plaintiffs' efforts to conform the Judgment to these prior orders, and to the Court's interpretation of the remedy, were both necessary and "inextricably intertwined with" the underlying lawsuit.[7]  The corresponding motions were reasonable in light of the plaintiffs' obligations to enforce and protect the fruits of the remedy, and clearly distinguishable from cases in which plaintiffs sought to add new and unrelated obligations, or requested fees for activities clearly separate from the original lawsuit.[8]

---

[6] Significantly, as stated in Mr. Schwartz' affidavit, the plaintiffs voluntarily excluded *all* time spent on their 2018 motion. Doc. 971-5 at 8.  While the plaintiffs' time records describe activities related to this motion, they eliminated all hours spent on this motion, as described in their fee charts.  Doc. 971-2, Col. 3; 971-4.  Defendants' assumption that plaintiffs seek fees for this time is simply wrong.  Opp. at 2, n.2 and 11, n.20.

[7] *Cody,* 304 F.3d at 773 (lack of success no impediment to fees if work was a "necessary adjunct to the initial litigation" and "inextricably intertwined with" the underlying suit); *see also*, *Johnson v. City of Tulsa*, 498 F.3d. 1089, 1103, 1108-09 (10th Cir. 2007) (reasonable post-judgment efforts to enforce the fruits of the decree are compensable).

[8] *See, e.g., P.J. by & through W.J. v. Connecticut State Bd. of Educ.*, 931 F.3d 156, 167, 172-73 (2d Cir. 2019) (vacating portion of fee award and finding plaintiffs' unsuccessful motion to enforce unnecessary since plaintiffs ultimately accepted State's original proposed resolution); *Plyler v. Evatt,* 902 F.2d 273, 280-81 (4th Cir.1990) (holding that prevailing party status under §

7

Finally, this Court has ruled that attorney's fees were necessary and reasonable where the plaintiffs' activities involved the interpretation, implementation, and enforcement of the Judgment, including the creation of new service eligibility criteria, related appeal rights for class members, and their partially unsuccessful opposition to defendants' motion to modify the Judgment.[9] Opp. at 3. The defendants previously conceded that affirmative motions, like the plaintiffs' unsuccessful Motion to Incorporate Disengagement Criteria, fell within this legal framework for entitlement to fees, and they cite no First Circuit case law holding that attorneys' fees are precluded when affirmative motions to modify, interpret or enforce a decree are unsuccessful.[10] *Id*. Therefore, the plaintiffs are entitled to their requested fees for their 2020 motions seeking to conform the Judgment to the Court's understanding of its Order and to implement the directions of this Court and the Court of Appeals.[11]

**V.    The Plaintiffs Are Entitled to their Requested Fees for Monitoring the Implementation of the Judgment.**

It is well-settled that prevailing party plaintiffs are entitled to an award of attorneys' fees for time reasonably spent monitoring the implementation of a judgment. *Brewster v. Dukakis,*

---

1988 does not "turn narrowly on whether [a] party prevailed on [a] particular matter," but instead on whether the "separate proceeding is so unrelated as to justify treating it as a separate lawsuit.").

[9] *Rosie D.,* 759 F. Supp. 2d 146, 150-52 (2011).

[10] Contrary to the defendants' assertion, *Brewster*, 786 F.2d at 22 (1st Cir. 1986) does not stand for the principle that fees are unavailable when motions to modify are unsuccessful. Rather, the Court concluded that, having lost their respective appeal and cross appeal from the District Court's fee decision, both parties would bear their own costs and that no counsel fees would be awarded for time spent on the appeals. *See also, Brewster v. Dukakis*, 3 F.3d 488, 494 (1st Cir. 1993) (rejecting a total ban on future fees when the underlying systemic injunction remained in place without specifically addressing the availability of fees for unsuccessful affirmative motions).

[11] Significantly, the plaintiffs' voluntary 10% reduction from its total fee request equates to a 65% reduction in all time and fees related to their three 2020 motions. As with their 2018 motion, for which *all* time related to that motion was excluded, the defendants improperly ignored the number of excluded hours in their characterization of the plaintiffs' fee request.

8

786 F.2d at 16; *Garrity v. Sununu,* 752 F.2d 727, 738-39 (1st Cir. 1984); *Rosie D.,* 759 F. Supp. 2d at 150.  This entitlement is not limited by the presence or absence of a court-appointed monitor.  In fact, the absence of a judicial agent to oversee implementation intensifies the responsibility of the plaintiffs to assess the defendants' efforts to comply with the Judgment.

The defendants argue that since ¶ 52 of the Judgment provided for the termination of the Court Monitor and mandatory reporting in five years, this deadline also terminated the plaintiffs' responsibility to review the State's compliance with the Judgment, and their concomitant entitlement to attorneys' fees for reasonable monitoring activities.  Opp. at 17-18.  However, the Judgment never established any end date for monitoring by the plaintiffs.  Nor can it conceivably be read to imply a prohibition on monitoring or a termination of the entitlement to monitoring fees.  To the contrary, since ¶ 52 of the Judgment explicitly provides for the Court's ongoing jurisdiction until it finds that the defendants have substantially complied with its terms, it is axiomatic that the plaintiffs' fiduciary duty to review information and assess the defendants' compliance activities must continue until dismissal of the case.  Therefore, the plaintiffs are entitled to reasonable fees for monitoring the implementation of the Judgment, especially after the termination of the Court Monitor.

## VI. The Plaintiffs Are Entitled to their Requested Fees for Litigating their Fee Request.

Courts have consistently held that when defendants oppose a reasonable fee demand and require plaintiffs to litigate the matter, plaintiffs are entitled to reasonable fees for preparing and litigating their entitlement to, and the amount of, their attorneys' fees.  *Torres-Rivera v. O'Neill-Cancel,* 524 F.3d 331, 341 (1st Cir. 2008).  The defendants have previously conceded this entitlement.  *Rosie D.,* 759 F. Supp. 2d at 152 ("Defendants do not dispute that Plaintiffs' counsel is entitled to attorneys' fees for time spent litigating the original request for fees and

9

costs). And while the amount of such fees must be reasonable,[12] *Torres-Rivera* does not suggest they should be assessed based upon the outcome of the underlying work or the fee motion itself.

Here, despite years of successfully settling prior fee requests, the parties were unable to resolve the separate fee request submitted to the First Circuit for time spent on the appeal. As a result, the plaintiffs had no choice but to prepare a motion and memorandum to the First Circuit in July 2020. The First Circuit rejected the defendants' claim that the plaintiffs were not eligible for an award of attorneys' fees simply because they had not prevailed on appeal. Order of Nov. 3, 2020. On remand, despite determined efforts between July – October 2021 to resolve this request that included several extensions from the Court, the parties were again unable to agree on attorneys' fees, thereby necessitating the preparation and submission of this Motion in December 2021, together with extensive exhibits and affidavits.[13]

The defendants' claim that no fees should be awarded for any time spent litigating either the initial request to the First Circuit or this Motion is wholly unsupported, contrary to relevant legal authority, and should be rejected.

## VII. Conclusion

For the reasons set forth above and in their Motion, Memorandum and exhibits, the Court should award the plaintiffs the fees and costs listed in Exhibit 1. Doc. 971-1, Col. 6.

Dated: February 23, 2022

---

[12] As noted in Sec. II, *supra,* the defendants have made no claim that the amount of time incurred on either the fee request to the First Circuit, or to this Court, is unreasonable or excessive. As a result, any such argument is waived.

[13] The time spent on drafting the Motion and Memorandum to the First Circuit and to this Court up through November 22, 2021 is included in the total fee request set forth in Exhibit 1. Fees for time spent after this date, including finalizing the initial submission, drafting this reply, and litigating the Motion are waived.

RESPECTFULLY SUBMITTED,
BY THEIR ATTORNEYS,

/s/ Steven J Schwartz
Steven J. Schwartz (BBO#448440)
sschwartz@cpr-ma.org
Cathy E. Costanzo (BBO#553813)
ccostanzo@cpr-ma.org
Kathryn Rucker (BBO#644697)
krucker@cpr-ma.org
Center for Public Representation
22 Green Street
Northampton, MA 01060
(413) 586-6024

Daniel W. Halston (BBO # 548692)
daniel.halston@wilmerhale.com
Disha Patel (BBO # 707586)
disha.patel@wilmerhale.com
Wilmer Hale, LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Frank Laski (BBO#287560)
fjlaski@gmail.com
154 Oliver Road
Newton, MA 02468
(617) 630-0922

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2022, I electronically filed the foregoing document using the CM/ECF system.  I certify that the counsel of record are registered as ECF filers and that they will be served by the cm/ecf system to: Daniel J. Hammond, Daniel.Hammond@mass.gov and Douglas Martland, Douglas.Martland@mass.gov

/s/ Steven J. Schwartz
Steven J. Schwartz

11