UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 01-30199-RGS

ROSIE D., et al.,

v.

CHARLES BAKER, et al.,

MEMORANDUM AND ORDER
ON PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND COSTS

March 22, 2022

STEARNS, D.J.

After fifteen years of efforts to achieve substantial compliance with the underlying Judgment in this matter, as well as a series of subsequent remedial orders, and after a comprehensive review by the First Circuit Court of Appeals, *see Rosie D. by John D. v. Baker*, 958 F.3d 51 (1st Cir. 2020), this court determined that the Commonwealth defendants had, with plaintiffs' prodding, accomplished what could have been reasonably expected of them. As the court observed in terminating the litigation, these efforts had resulted in a significant revamping and expansion of the social services available to emotionally disturbed children in Massachusetts. Plaintiffs now move for a final award of attorneys' fees and costs. For the following reasons, the

court will ALLOW the motion in substantial part.

## BACKGROUND

The court assumes familiarity with the background of the case and will recount the facts that are relevant to the instant fee request. Plaintiffs, a class of children with serious emotional disturbances (SED), sued the defendants on October 31, 2001, for violations of the Medicaid Act, 42 U.S.C. §§ 1396 *et seq*. Five years later, following a bench trial, Judge Michael Ponsor found that the Commonwealth defendants had violated (1) the Act's requirement of early and periodic screening, diagnostic, and treatment services (EPSDT) and (2) its "reasonable promptness" provision. On July 16, 2007, Judge Ponsor entered a Judgment in favor of the plaintiffs that incorporated a remedial plan intended to ensure that the plaintiff class had access to the services mandated by Medicaid. *See* Judgment (Dkt # 368).

Having secured the Judgment, plaintiffs moved for an award of $7,185,958.32 in attorneys' fees and costs under 42 U.S.C. § 1988. Defendants took the position that plaintiffs were entitled to only $2,708,487.01. The court largely sided with plaintiffs and ordered an award of $7,106,414.57. *See Rosie D. ex rel. John D. v. Patrick*, 593 F. Supp. 2d 325, 335 (D. Mass. 2009). Judge Ponsor first recognized that, following

2

Case 3:01-cv-30199-RGS Document 977 Filed 03/22/22 Page 3 of 14
entry of the Judgment, the plaintiffs were a "prevailing party" eligible for fees under 42 U.S.C. § 1988. *See id.* at 328; *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603-604 (2001). He then approved the hourly rates of the plaintiffs' attorneys after noting that the private attorneys who had joined the plaintiffs' team from the law firm WilmerHale had voluntarily reduced their rates by nearly 40%. He used WilmerHale's reduced rates as a benchmark for the rates applicable to plaintiffs' public interest attorneys. *See Rosie D.*, 593 F. Supp. 2d at 330-331. Finally, Judge Ponsor rejected defendants' request for a 30% reduction in plaintiffs' claimed hours, finding the number of hours expended to be reasonable and nonduplicative given the complexity of the case and plaintiffs' voluntary agreement to eliminate over 5,200 hours of billings. *See id.* at 332.

Plaintiffs moved for a second award of fees and costs in May of 2010, seeking $1,502,250.30 associated with their attorneys' work monitoring the implementation of the Judgment and litigating disputes that had arisen during that process. The court awarded $1,459,684.50 in fees and costs after largely rejecting defendants' position that the court should discount any undertaking by plaintiffs' lawyers that was not "reasonably calculated to

3

deliver a material benefit to Plaintiffs." *Rosie D. ex rel. John D. v. Patrick*, 759 F. Supp. 2d 146, 149-150 (D. Mass. 2011). In lieu of defendants' proposed standard, Judge Ponsor turned to the First Circuit's decisions in *Garrity v. Sununu*, 752 F.2d 727, 738 (1st Cir. 1984), and *Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986), and held that plaintiffs were eligible for fees associated with attorney activities that were "necessary for reasonable monitoring." *Rosie D.*, 759 F. Supp. 2d at 150. Judge Ponsor also found that the specific actions challenged by defendants, including seeking court orders over disputes surrounding implementation of the Judgment, opposing defendants' motion to postpone the implementation schedule, proposing an alternate form of judgment, and filing their initial fee petition were reasonable "monitoring" activities. *See id*. at 150-153. Judge Ponsor made modest reductions for hours expended that he deemed excessive.

After unsuccessfully litigating Judge Ponsor's 2009 and 2011 orders, defendants did not oppose the additional motions for fees and costs that plaintiffs subsequently filed over the years. *See* Dkt # 566; Dkt # 636; Dkt # 670; Dkt # 755; Dkt # 874. The parties were not able to agree, however, on the amount to be awarded in fees and costs on this final motion.

4

Plaintiffs seek $1,310,647.00 in fees and $654.00 in costs for their attorneys' legal work between July 1, 2018, and November 29, 2021. Plaintiffs also state that they have reduced their total billable hours by 25% and the resulting lodestar by an additional 10%. *See* Mem. in Supp. of Mot. for Fees, Ex. 1 (Dkt # 971-1). Defendants oppose any award of fees and costs, arguing that plaintiffs are seeking compensation for work that was unsuccessful or undertaken in an unreasonable attempt to expand the Judgment. *See* Opp'n (Dkt # 974) at 1.

## DISCUSSION

Under 42 U.S.C. § 1988, the court may award reasonable attorneys' fees and costs to a "prevailing party." After prevailing on the merits, a plaintiff also remains eligible for fees for "reasonable post-judgment monitoring." *Brewster*, 786 F.2d at 19. To satisfy the reasonableness requirement, the work performed must be "useful" and "ordinarily necessary." *Id*. The court in applying this standard is to ensure that post-judgment monitoring does not become "a state-funded, open-ended sinecure for counsel." *Id*. at 18 (internal quotation marks omitted).

Once a party is deemed eligible for attorneys' fees, the court uses the lodestar method to determine the total amount of fees, multiplying the

5

reasonable number of hours billed by a reasonable rate. *See Rosie D.*, 593 F. Supp. 2d at 328, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "In implementing this lodestar approach, the judge calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001).

Beyond dispute, plaintiffs are a prevailing party within the meaning of 42 U.S.C. § 1988. *See* First Circuit Order of November 3, 2020 (First Circuit Order) (Dkt # 909). The question, therefore, is whether the activities for which plaintiffs now seek fees and costs were "useful" and "ordinarily necessary." The billed activities include: (1) plaintiffs' Motion to Modify Paragraph 52 of the Judgment and to Reinstate Court Monitoring and Reporting (Monitoring Motion) (Dkt # 910); (2) plaintiffs' Motion to Modify the Judgment to Incorporate Defendants' EPSDT Timeliness Standard for Remedial Standard (Timeliness Standard Motion) (Dkt # 918); (3) plaintiffs' Motion to Modify the Judgment to Incorporate Outpatient Therapy (Outpatient Therapy Motion) (Dkt # 920); (4) plaintiffs' 2018 Opposition to

6

Defendants' Motion to Terminate Monitoring (2018 Monitoring Opposition) (Dkt # 857) and subsequent work on the appeal by the defendants to the First Circuit; (5) plaintiffs' 2021 Opposition to Defendants' Motion to Alter and/or Terminate Judgment (2021 Termination Opposition) (Dkt # 955); (6) plaintiffs' limited post-2018 monitoring activities; and (7) plaintiffs' work on the instant motion for fees and costs (Dkt # 970).[1]  Defendants contest an award of fees for each of these activities because, in defendants' view, they represented non-compensable efforts to expand the Judgment or were unsuccessful, or both.

Defendants' position that activity undertaken to expand the scope of a judgment is *per se* not compensable is unsupported by any First Circuit or Supreme Court precedent of which the court (or the defendants) is aware. Rather, defendants rely on the inverse inference.  *See* Opp'n at 5-6 ("Since *Buckhannon* clarified the meaning of the phrase 'prevailing party,' the First Circuit has not issued any ruling finding that a party is eligible for fees or costs for unsuccessful attempts to *expand* a judgment.").  This is not an

---

[1] Defendants also challenge an award of fees related to plaintiffs' Motion to Approve and Order Disengagement Measures, Actions to Improve Access to Remedial Services, and Provisions on Outpatient Services (Dkt # 847).  Plaintiffs, however, do not seek fees related to this Motion.  *See* Pls.' Reply (Dkt # 976) at 7 n.6.

issue that the court need attempt to resolve as it will apply the "useful and ordinarily necessary standard" that Judge Ponsor derived from *Garrity* and *Brewster* and applied consistently throughout his tenure as the judge presiding over this case. Second, while the degree of success is certainly relevant to the amount of a fee award, the court respects Judge Ponsor's decision to grant fees for reasonable monitoring efforts even in instances where they proved unsuccessful. *See Rosie D.*, 759 F. Supp. 2d at 151. With that framework in mind, the court will evaluate the request for fees for each of plaintiffs' activities.

### a. Plaintiffs' Affirmative Motions

The Monitoring Motion, Timeliness Standards Motion, and Outpatient Therapy Motion were reasonable monitoring activities that are compensable. They each represented steps undertaken to protect core aspects of the Judgment that are "inextricably intertwined" with the underlying litigation. *Cody v. Hillard*, 304 F.3d 767, 775 (8th Cir. 2002).

As to the Monitoring Motion, the Judgment mandated the appointment of a Court Monitor tasked with reviewing defendants' compliance with the Judgment based on periodic reporting by the defendants. *See* Judgment (Dkt # 368-2) ¶¶ 47-48. While the Court

8

Monitor's appointment was initially intended to last five years, the parties repeatedly agreed to extend her appointment until the final term expired on December 31, 2018. *See Rosie D. v. Baker*, 2021 WL 2516082, at *1 n.4 (D. Mass. June 19, 2021). When the First Circuit held that Judge Ponsor had erred in extending the monitoring and reporting requirements beyond that date, it expressly opened the door for plaintiffs, on a showing of good cause, to seek to modify this aspect of the Judgment. *See Rosie D.*, 958 F.3d at 59. While ultimately unsuccessful in seeking to extend the monitoring and reporting requirements indefinitely, plaintiffs' actions fell within the ordinary (and invited) responsibilities of a party seeking to protect a final Judgment.

The same pertains to the Timeliness Standards Motion. Although this court denied the motion, it took note of the fact that "[p]laintiffs have produced evidence that children with SED often face significant delays in obtaining EPSDT services – in some cases as long as 12 weeks." *Rosie D.*, 2021 WL 2516082, at *4. In light of defendants' voluntary adoption of the 14-day standard in 2012, it was reasonable for plaintiffs to seek to institutionalize that standard after the First Circuit cleared the way for them to do so. *See Rosie D.*, 958 F.3d at 59.

9

The Outpatient Therapy Motion, too, was reasonable. While the court ultimately found no evidence that children receiving outpatient therapy were being denied services required under the Judgment, the court did not go so far as to say, nor does it say now, that plaintiffs' efforts were unnecessary. The Outpatient Therapy Motion bears no resemblance to a non-compensable filing intended to run up fees gratuitously; plaintiffs simply attempted to clarify the full set of services required under the Judgment before compliance was turned back over to the Commonwealth. The court thus concludes that plaintiffs are eligible for fees for all three of their affirmative motions.

### b. Oppositions to Defendants' Motions

Plaintiffs 2018 Monitoring Opposition was both reasonable and necessary and is compensable. The First Circuit ruled that even though plaintiffs ultimately lost on appeal, they were still eligible for appellate fees and costs. *See* First Circuit Order at 2 ("We find unavailing the Commonwealth's arguments that the law in this Circuit or the facts of this case wholly preclude Plaintiffs from recovering § 1988 fees and costs for work done on the instant appeal."). Given the availability of appellate fees, plaintiffs are also eligible for fees and costs incurred in litigating the same

motion in the District Court, where they initially prevailed.   Monitoring was at the core of the Judgment, and plaintiffs' attorneys were obligated in the ordinary course of their representation to oppose defendants' (however justified) efforts to end it.   That principle applies with even greater force to the 2021 Termination Opposition.   Once a motion to terminate the Judgment was filed, plaintiffs' lawyers had no option but to file an opposition.

### c. Plaintiffs' Monitoring Activities

Defendants oppose any award of fees for the limited monitoring activities plaintiffs' attorneys engaged in after the monitoring provisions of the Judgment expired on December 31, 2018.   On this issue, the court agrees with defendants.   Once the provisions expired, plaintiffs' authority to act under these provisions expired with it, however well-intentioned their efforts.   The court also notes that plaintiffs failed to seek the approval of the court to continue these activities despite the running of the clock.   The court therefore will deduct the fees associated with these post-2018 monitoring activities in the amount of $44,450.00 as follows: $40,670.00 from the fees allocated to the Center for Public Representation, $3,780.00 from the fees allocated to Frank Laski, and $0 from the fees allocated to WilmerHale.

### d. Motion for Fees

Defendants also ask the court to limit any award of fees related to their motion for fees based on the motion's success. However, the case they cite, *Lund v. Affleck*, 587 F.2d 75 (1st Cir. 1978), runs counter to their position. *See id.* at 77 ("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee.").

### e. Lodestar

Defendants do not contest the reasonableness of the hourly rates for each of plaintiffs' attorneys.[2] Defendants also do not oppose any of the hours for which plaintiffs seek remuneration as duplicative, unproductive, or excessive. Instead, they contend that plaintiffs are ineligible for any fees because the work they performed during the relevant period was, in defendants' eyes, unsuccessful. To be sure, the degree of success obtained

---

[2] The court notes that the WilmerHale attorneys have substantially reduced their ordinary hourly rates to $700 for partner Daniel Halston, $465 for senior associates Sonia Sujnani and Kevin Palmer, and $380 for junior associates James Bor-Zale and Disha Patel. *See* Dkt # 971-3. Plaintiffs' public interest attorneys seek similar hourly rates, including $700 for experienced attorneys Steven Schwartz, Kathryn Rucker, Cathy Costanzo, and Frank Laski, $380 for litigation fellow Alex Schwartz, and $220 for paralegals Karen Detmers and Nicole Dill. *See* Dkt #971-2; Dkt # 971-4.

is a factor to be considered in a fee award. *See Joyce v. Town of Dennis*, 720 F.3d 12, 31 (1st Cir. 2013). Here, while the activities at issue were unsuccessful, they need in fairness to be assessed in the context of the litigation as a whole, which no one argues was anything but a resounding success benefitting the children in need on whose behalf it was brought. While some reduction in fees for the lack of *immediate* success is appropriate, the court is not prepared to make no award at all.

After considering the relevant factors, the court concludes that some reduction in fees for lack of success is appropriate. Plaintiffs have already excluded 25% of the hours their attorneys expended and then reduced the resulting lodestar by 10%. Given the lack of immediate success, the court concludes that a 20% reduction (*i.e.*, an additional 10% on top of plaintiffs' voluntary reduction) is more appropriate. Accordingly, the court finds plaintiffs' request for fees to be reasonable subject to the above-referenced reductions and will award total fees of $1,129,490.00. The court will also allow plaintiffs' uncontested request for $654.00 in costs.

## ORDER

For the foregoing reasons, plaintiffs' Motion for Attorneys' Fees and Costs (Dkt # 970) is <u>ALLOWED IN PART</u>. Plaintiffs are awarded

$1,129,490.00 in fees and $654.00 in costs as follows: $950,911.20 in fees and $654.00 in costs to the Center for Public Representation, $122,604.80 in fees to WilmerHale, and $55,974.00 to Frank Laski.

        SO ORDERED.

        /s/ Richard G. Stearns
        UNITED STATES DISTRICT JUDGE